## Fisk *v.* Fisk et al., Executors.

| | |
|---|---|
| 2 | 71 |
| 113 | 71 |
| e113 | 78 |
| e113 | 908 |

An order appointing a tutor provisionally, but reserving to the court the right of determining the legality of the appointment whenever the question may be brought before the court, can confer no authority. Provisional tutors are unknown to the law.

An appointment by the court is necessary, even when the tutorship is applied for by the father. C. P. 949. He must be appointed like any other person.

Art. 946 of the Code of Practice, which provides that "where the father and mother of a minor reside out of the State, and are not represented in it, and the minor is also absent, he may be provided with a tutor or curator by the judge of probates of the place where he has interests to assert or defend," is an exception to the general rule prescribed by art. 944, that the appointment belongs to the judge of probates of the domicil or usual residence of the father or mother, if either be living. The object of art. 946 was to authorize the appointment of a tutor *ad bona,* to take charge of the minor's property in this State. A tutor appointed under its provisions cannot remove the minor's property out of the State. A tutor so appointed holds a civil office to endure as long as the minority lasts, or until he is legally superseded, and binds him to account to the domestic judge at the expiration of the tutorship. C. C. 350.

The statute of 1 April, 1843, recognizes as valid and binding upon the courts of this State, appointments of tutors or guardians of minors residing out of the State, made at the place of the minor's domicil, if within the United States ; and, under the second section of that act, any such foreign tutor or guardian may, at any time, on making a proper showing, compel a tutor *ad bona* appointed here to account to him, and may remove the minor's property out of this State, upon proof of his authority to do so under the laws of the minor's domicil.

Though by the laws of the State in which the minors reside, their father cannot become their tutor or guardian, and consequently cannot receive property belonging to them in this State, he may take all the steps necessary for its preservation; he may have any claims due to them liquidated, and the amount brought into court, and invested for their benefit. C. C 348.

APPEAL from the Second District Court of New Orleans, *Canon, J.*

Stebbins *Fisk,* by his last will, bequeathed the sum of $100,000 to his brother *Abijah Fisk,* for his sole use and benefit, without any security whatever during his lifetime, and at his death to be divided and given equally between the children of *Sereno Fisk,* his youngest brother. *Abijah Fisk,* who resided in New Orleans, received the money, and used it during his life: upon his death, *Sereno Fisk,* who, with his children, resided in the territory of Wisconsin, appeared in New Orleans, and applied for the tutorship of his children, under the laws of Louisiana: he prayed to be appointed natural tutor of three of his minor children, whose mother was dead, and that his right to administer the property of two of his children, whose mother was still living, might be recognised. Upon this petition, the judge of the Court of Probates made the following order :

" I understand that by the laws of Wisconsin, the father cannot obtain the administration of his minor children, without giving bond and security for his faithful administration. These laws of the domicil are personal statutes, and follow the petitioner wherever he goes. Yet, I will grant the application, reserving to myself the decision of the question which may hereafter be raised in relation to said appointment, whenever the subject is brought before the court ; therefore let the prayer of the within petition be provisionally granted." An under tutor was appointed, and *Sereno Fisk* was sworn and duly authorized, in conformity with our law, to act as the tutor of his minor children. Thus qualified, he demanded of the executors of *Abijah Fisk,* the legacy left to his children by *Stebbins Fisk* : upon their refusal to pay the amount, he instituted the present suit.

FISK
v
FISK.

This action was excepted to by the defendants, upon various grounds: 1st. That the order of the Court of Probates appointing the plaintiff natural tutor of his children, is not valid in point of form, and therefore confers no power upon the plaintiff. 2d. That the plaintiff should have qualified as guardian of his children, at his place of domicil, in the territory of Wisconsin, and that he could not legally qualify as tutor here. 3d. That as, by the laws of Wisconsin, the plaintiff could not become guardian of his children, without giving security for his administration, he cannot become their natural tutor in Louisiana, without giving such security here as the laws of Wisconsin require guardians to give in that territory. These objections were sustained by the judge of the lower court, and the plaintiff appealed.

*Elmore* and *W. W. King*, for the appellant. The order of the Probate Court was sufficient to authorize the plaintiff to act as tutor. The plaintiff was entitled to the tutorship, and the word "*provisionally*," inserted in the order of appointment, should be regrrded as mere surplusage. The Second District Court of New Orleans had no authority to set aside an appointment made by the Court of Probates. *Leckie* v. *Fenner*, 9 Rob. 189. The plaintiff could only qualify as tutor of his children here.

All the rights of foreign administrators rest either upon some positive legislative provisions of the country, or upon the comity of nations. So far as these rights depend upon the comity of nations, Judge Story says, in his Conflict of Laws, no. 499, that "in America, in the States acting under the jurisprudence of the common law, the rights and powers of guardians are considered as strictly local, and not as entitling them to exercise any authority over the person or personal property of their wards in other States, upon the same general reasoning and policy which have circumscribed the rights and authorities of executors and administrators." Again, no. 504 : "No one has ever supposed that a guardian appointed in any one State in this Union had any right to receive the profits, or to assume the possession, of the real estate of his ward in any other State, without having received a due appointment from the proper tribunals of the State where it is situate." "The same rule is applied by the common law to moveable property, and has been fully recognised both in England and in America. No foreign guardian can, *virtute officii*, exercise any rights or powers, or functions, over the moveable property of his ward, which is situated in a different State, or country from that in which he has obtained his letters of guardianship ; but he must obtain new letters of guardianship from the local tribunals authorised to grant the same, before he can exercise any rights, powers or functions over the same. Few decisions upon the point are to be found in English or American authorities, probably because the principle has always been taken to be unquestionable, founded upon the close analogy of the case of foreign executors and administrators." He refers to many authorities, and, in note to no. 513, to a great number of cases. The case of *Morrell* v. *Dickey*, 1 Johnson's Ch. Rep. p. 153, was decided by Chancellor Kent, and is a case strictly in point. This State has gone farther than any other in the Union, in prescribing that property in this State shall be governed by our own peculiar laws, and no distinction exists in this respect between moveables and immoveables. C. C. arts. 9, 10, 483.

To remedy the inconvenience of subjecting foreign guardians to the necessity of qualifying again in this State, the act of 1843 was passed, (Acts, p. 97,) by which it is declared, that a foreign guardian shall be entitled to sue for and recover property, &c. of minors in this State, "without being under the necessity of qualifying as tutor of said minor, according to the laws of Louisiana." "Provided, that nothing in this act shall authorise any such tutor or guardian to take possession of, or remove from the State, the property of any minor or estate, unless satisfactory proof be furnished to the court that the debts of the succession are paid, or that none exist in the State." There is no doubt that foreign guardians may be recognised here under the above law; but it would be a perversion of the meaning and intention of the act, to say that, because this liberty is granted to foreign guardians, therefore, our own laws for the appointment of tutors are repealed, and that all persons residing out of the State must be qualified as guardians where they reside, and cannot be

qualified here. The very language of the act takes it for granted that such persons could be qualified here, and the act was passed to dispense with that necessity. There are many provisions of our law which do not leave the plaintiff's right to the tutorship of his children, as a mere matter of inference.

The minors, in this case, reside out of the State; their property is here ; *ex necessitate rei*, there must be some one to take care of their interests. Our Code says, art. 294: "Whenever a circumstance occurs which makes the appointment of a tutor necessary, information thereof to the competent judge may be given by any one." Succeeding articles provide for the appointment of a tutor. The Code of Practice provides, art. 946, "If the father or mother resides out of the State, *and are not represented in it*, and the minor be also absent, he may be provided with a tutor, or curator, by the judge of probates of the place where he has interests to assert, or defend." Art. 947, makes it the duty of all persons to give information of the necessity for the appointment of a tutor. Art. 948, directs the judge, when the information is given, to appoint a tutor. Art. 949, provides that, "If it be the father of the minor who presents the potition, claiming his tutorship, the judge shall confer it on him, only requiring of him an oath to perform the duties well and faithfully." In the case of *Harman et al.* v. *McCawley*, 9 La. 571, the court distinctly recognised the right of the Court of Probates to appoint tutors to administer the property of minors residing out of the State. In the case of *Berluchaux* v. *Berluchaux*, 7 La. 543, the court say : "A mother, residing in a foreign State, or country, with her children, who inherit property in this, on coming here, and making application to the proper authority for that purpose, would be preferred to all others, in obtaining the administration of the property thus inherited." The Civil Code, art. 326, provides that, "*No cause of exclusion or removal* from the tutorship of his children, is applicable to the father, except that of unfaithfulness of his administration, and of notoriously bad conduct." Art. 269, declares that, tutors by nature are not compelled to give security; and, by art. 268, fathers are entitled to be the natural tutors of their children. Art. 321 declares that, the father cannot excuse himself from the tutorship. These authorities show, not only the right of the Court of Probates to appoint a tutor here, but also the right of the father to become the tutor, without giving any security.

But the law goes even further. Arts. 275 and 237 of the Civil Code give the surviving father, or mother, the right of appointing a tutor to their minor children. If the father has the right of appointing another, certainly he has the right of acting himself. But it has been urged, on the other side, that the plaintiff cannot act as the tutor of his children, because he resides out of the State, and that, by art. 298 of the Code, absence from the State is made a cause for depriving a tutor of his office. We have seen that by art. 326 of the C. Code, no cause of exclusion applies to the father, except unfaithfulness in his administration, or notoriously bad conduct. To give the construction contended for, to article 298, would render it inconsistent with article 326. But the Supreme Court has repeatedly decided. that art. 298 does not apply to natural tutors of minors out of the State. We cannot better reply to the objection, than by quoting a paragraph of the decision in the case of *Delacroix* v. *Boisblanc*, 4 Mart. 716 :

"The question, if it be one, may be reduced to this : Can the law appealed to by the applicant embrace cases where a parent, leaving the State, takes his children along with him ? That all men have the right to expatriate, at least when by such removal they cause no prejudice to the community of which they were members, is not questionable in a free country ; that a natural tutor expatriating, has a right to take his children with him, is still less disputable. How, then, could the law providing for the nomination of another tutor, be carried into effect in such a case ? A tutor is appointed principally over the person of the minor, but here the minors are gone. He is to take care of them in the manner prescribed by our laws, but they are beyond the reach of those laws. It is clear the provision alluded to is made for cases where the tutor alone is going away, and where he can be prevented from taking his ward out of the State. This would take place, we presume, where any other tutor than a parent would be about absenting himself. Such a tutor being merely the creature of the law, would probably not be at liberty to carry his ward where the law does not extend. The nomination of another tutor is then obviously necessary. But when the ward himself is removed where our laws can no longer protect him,

FISK
*v.*
FISK.

there must be an end to the interference of our courts in his behalf." See, also, *Robins* v. *Weeks*, 5 Mart. N. S. 384.

The doctrine we are combatting is directly opposed to the decision in the case of *Berluchaux* v. *Berluchaux*. The power of the parent to remove from the State with his child results necessarily from the parental authority.

If his removal from the State with his children, and their property, be no cause for the destitution of his tutorship, there is no reason why his residence out of the State should debar him from the tutorship.

Generally the interests and wants of minors residing out of the State require that their property should be transferred to the place of their domicil; it may be absolutely necessary for their support. Our law does not forbid the removal of the property of minors, residing out of the State, to the place of their domicil. What objection then can it be to the appointment of a tutor, that he resides out of the State, with the minors? If the father should leave the State permanently, with his minor children, leaving property of theirs behind, *and no one to represent him*, then art. 946 of the Code of Practice, gives the court a right to appoint a tutor; but in this case the plaintiff was here at the time of his appointment; *non constat*, that he will leave the State before the administration of his children's property is closed. If he does, he has a right of appointing some one to represent him, or of appointing a tutor. C. C. 275. If he should desire to remove the property of his children after he has gained posession of it, to their domicil, when it arrives there, he will be compelled by the courts of that country to qualify as guardian under their laws; if he does not, he will be deprived of the property and his guardianship.

As to the third exception that, admitting the plaintiff has the right of qualifying as tutor here, he cannot do so without giving such security as the laws of Wisconsin prescribe. If he has the right to apply here for the tutorship, it follows, as a necessary legal consequence, that he is to apply under our own law, and must comply with its requisitions. The plaintiff has complied with all the requisitions of our law, and is fully qualified to act as tutor. Natural tutors are not required to give security for their administration. C. C. arts. 263, 330. C. P. art. 949. The father is entitled to the administration of the property of his minor children, whose mother is still living. C. C. arts. 267, 239, 532.

*Watts*, for himself and his co-defendant. A non-resident father, of non-resident children, cannot become tutor in Louisiana, and receive the property of his children, without having become guardian to those children at the place of his residence, where he would be required to give adequate security for its preservation and restoration.

A non-resident, who would be placed under obligations and restrictions at the place of his domicil, has no right to come to a foreign State, and demand advantages peculiar to that State, and which would be refused to him at home, especially when he does not place himself under the restrictions and vigilance of the foreign law, whose immunities he invokes. A natural father in Louisiana is tutor to his children without giving security; but he is compelled to make an inventory, to be placed under the espionage, not only of the court, but, in particular, of an under-tutor. The relations and friends of the minor, who are usually the relations and friends of the testator, or relative through whom the property comes, are also the watchmen of his conduct, and his property is placed under a tacit mortgage.

The naked question is presented to this court, whether it will permit a father, who resides in Wisconsin, where the minors also reside, to demand and receive the sum of $100,000, without having given security, according to the law of the place of his and their domicil, and where neither the courts of Louisiana, nor any other power or person, can control him in the administration of his trust, when once he has received it?

The Civil Code is not to be construed as a statute. It contains many statutory provisions which are to be strictly observed, but much the larger portion of it is a body of general rules, subject to all the modifications which circumstances may require. I refer to arts. 2, 21, 958, 1959, 1960, 2278, 2837, 3077, for the extensive equity powers of particular courts in cases not coming strictly within its provisions. Surely, the non-residence of a father and minors constitutes a peculiar and important circumstance, which, in the language of art. 2, exempts the case from the operation of laws which relate to what passes in the ordinary course of affairs, and places it under the equity power of the court, which

is to provide for solitary and singular cases. The Civil Code, art. 21, declares that, "In civil matters, where there is no express law, the judge is bound to proceed and decide according to equity. To decide equitably, an appeal is to be made to natural law and reason, or received usages, where positive law is silent." These directions apply forcibly to the present case. This mode of reasoning enables me at once to put aside all the articles of the Code cited by the counsel for the plaintiff, as inapplicable to the present question. The cases cited by them are easily disposed of. In *Berluchaux* v. *Berluchaux*, 7 La. 543, the court says, that the natural tutor, who demanded the property, had come to Louisiana, but it is not said whether to reside, or only for the purpose of demanding the property. Admitting that she was not to reside, her domicil was under the dominion of the Spanish laws, where there existed an under tutor to watch her, a tacit mortgage upon her property, and relatives to guard the interests of the minor. The minor, therefore, had the same protection that he would have had in Louisiana; but this decision cannot be an authority in a case where, by the laws of the domicil of the party, security must be given, and where there is no under tutor, nor tacit mortgage, and no knowledge in the court that the minor had property. To the quotation from *Delacroix* v. *Boisblanc*, I answer that, however eloquent or rhetorical it may be, in twenty-seven States of the Union, the father would not be permitted to carry the property of his minor children out of the jurisdiction of the court, unless he had first shown that, at the place of his new domicil, he had applied for and obtained the appointment of guardian of his children, made an inventory of their property, and given corresponding security according to the laws of the new domicil.

The act of 1843, is a positive repeal of those rules of law which render local the office of guardian, and gives that office the same universality which that of an executor now has; but, in such cases, where security is to be given by the guardian, it is incumbent on the court which is about to surrender the minors' property to the foreign guardian, thorougly to investigate and ascertain that the security is corelative to, and is given in view of, the amount and value of the property about to be surrendered. This is a full answer to the text quoted by the plaintiff's counsel from Story's Conflict of Laws and cases cited. But, even in the case cited, (1 Johns, Ch. R. p. 153, *Morrell* v. *Dickey*,) if Mrs. Morrell had obtained her appointment in Pennsylvania, and given security in express relation to the New York bequest, she would have been entitled to receive it.

If Sereno Fisk had applied to the proper court in Winconsin, had there suggested that his minor children were entitled to a legacy of $100,000 from one uncle, had stated that he was desirous of demanding this legacy from the executors of another uncle, had prayed that he might be permitted to give security adequate to the trust, and that he might thereupon be appointed guardian, and had all this been done in due form. he would have come within the provisions of the act of 1843, and the defendants, after inquiry into the sufficiency of the security, might have felt bound to comply with the plaintiff's demand. If Sereno Fisk had remained in Wisconsin, he could not have been tutor, and have received the property of the minors, except by strict compliance with the laws of Wisconsin: and his presence in Louisiana, for a day, week or month, cannot entitle him to the tutorship and possession of the money.

*Micou* and *Prentiss*, on the same side.

The judgment of the court was pronounced by

ROST, J. The plaintiff, who resides in the territory of Wisconsin, acting as tutor of three of his minor children, and by virtue of the paternal power in relation to two others, whose mother is living, seeks to recover the sum of $100,000 dollars, alleged to be due his children, by the succession which the defendants represent.

The defendants having excepted to his capacity to sue as tutor, he adduced, in support of it, the following appointment of the Court of Probates of this parish:

"I understand that by the laws of the territory of Wisconsin, the father cannot obtain the administration of the estate of his minor children. These laws of the domicil are personal statutes, and follow the petitioner wherever he goes.

Yet I will grant the application, reserving to myself the decision of the question which may hereafter be raised in relation to said appointment, whenever the subject is brought before the court : therefore, let the prayer of the within petitioner be provisionally granted."

The judge of the court below disregarded the order, and was of opinion that the plaintiff must qualify as tutor or guardian at the place of his domicil. He maintained the exception, and the plaintiff appealed.

Provisional tutors, for the purpose intended in this case, are unknown to our laws; their powers and duties are nowhere defined, and the court did not err in disregarding such an appointment. Tutorship is an institution of public order, which has no existence unless it is established in strict conformity to law. If the governor were to send to the Senate provisional nominations of judges, reserving the right to revoke them at pleasure, they would not be constitutional nominations. If, in adjudicating upon an action of debt, a court were to say: "I understand that in the territory of Wisconsin, where the debt accrued, the plaintiff has no right of action; the law of the contract ought to follow him wherever he goes: yet I will give him a judgment, reserving the decision of the question which may hereafter be raised as to its validity; let the prayer of the petitioner be provisionally granted "—such an order would have none of the requisites of a judgment, and would be an absolute nullity.

A receiver may in certain cases be appointed provisionally to take charge of property ; but a legal function, the duration of which is fixed by law, never can be provisional.

It is said that no appointment is necessary, where the father applies for the the tutorship : but art. 949 of the Code of Practice expressly provides that, the judge shall confer the tutorship on the father. He must, therefore, be appointed like any other tutor. *Berluchanx's* case, 7 La. 539.

The question whether the plaintiff is entitled to an appointment of tutor in our courts, for the purpose of receiving and carrying out of the State the sum he claims, remains to be examined.

It is provided by art. 946 of the Code of Practice, that if the father and mother of the minor reside out of the State, and are not represented in it, and the minor be also absent, he may be provided with a tutor by the judge of probates of the place where his principal property is situated, or where he has intérests to assert or defend. This is an exception to the general rule prescribed by art. 944 of the Civil Code, that tutors shall be appointed by the judge of the minor's domicil, and its object cannot be misunderstood. Generally speaking, the first object of the tutorship is the care of the person of the minor ; the second, the preservation of his property. When the minor is absent, the tutor appointed here exercises no control over his person. He is exclusively tutor *ad bona;* but so far as relates to the administration of the minor's property, he is *a domestic tutor;* he holds under the laws of the State a civil office, which is to endure as long as the minority lasts, or until he is otherwise legally superseded. See Proudhon, Droit des Personnes, vol. 2. His appointment binds him to account to the domestic judge at the expiration of the tutorship. C. C. art. 350. Until the rendition of his account and the delivery of the vouchers in support of it, every agreement between him and the minor arrived at the age of majority, is null and void. C. C. 355.

It would be a mockery of justice as well as a flagrant violation of our laws, to appoint a tutor under their stringent provisions, for the purpose of enabling him

to remove the property of his wards beyond their jurisdiction. The appointment of an under tutor to watch over his administration, and the stern rules which prescribe his duties and secure his accountability, would, under such an hypothesis, be vain things. The law does nothing in vain. It does not confer the power to defeat its commands. No domestic tutor can, by virtue of his appointment, remove the property of his wards out of the State. To obviate in part that difficulty, the act of 1843 has recognized as valid and binding upon the courts of Louisiana, the appointment of tutors or guardians made at the place of the minor's domicil, within the limits of the United States; and there is no doubt that, under the second section of that act, all such foreign tutors or guardians may, at any time, on making a proper showing, compel a tutor *ad bona* appointed here to account to them, and that they would be authorized to remove the property of the minors out of the State, upon proof that they had authority to do so by the laws of their domicil.

In Wisconsin the rule is that moveables follow the person, and are subject to the laws of the domicil. The sum claimed in this case, is viewed there as if it were within the limits of the Territory, and under the jurisdiction of its laws. It is admitted in the record that, under those laws, guardians cannot receive sums of money due their wards till they have given security to account for those sums. An appointment of guardian there, would consequently give no power to receive and carry away the sum claimed in this case, till it was shown that the security furnished was correlative to, and given in view of, that sum.

We will not assist the plaintiff in violating the laws which protect his children, and surrender to him $100,000, without security, against their express inhibition.

In the case of *Berluchaux*, 7 La., 543, it does not appear that the property of the minor was to be removed out of the State, and we must presume that it was not. As observed by the court, in the case of *Delacroix* v. *Boisblanc*, 4 Mart. p. 716, fathers have the right to expatriate themselves, and to take their children wherever they go; but when they do, the law presumes in them the intention to return, and, if their children have the property here, under the custody of our laws in consequence of the death of their mother, that property cannot be removed from the State till the father has been qualified as tutor or guardian at the place of his new domicil, and given there, with reference to that property, such securities as the law may require.

The plaintiff's counsel allege that it is not in his power to give security. The opposite counsel aver, on the other hand, that he has received a legacy of $70,000, and that he must be able to comply with the laws of Wisconsin, if he is trustworthy. However this may be, we must enforce our laws, as we understand them; his incapacity to receive the sum claimed, may inure to the benefit of his children and can cause them no injury.

He can under the laws of Wisconsin as a *prochain ami*, and under those of Louisiana as a father, take all necessary steps for the preservation of such funds belonging to his children, as he is not authorized to receive. The claim may be liquidated, and the amount allowed be brought into court, on his application, and, if necessary, either lent upon mortgage, or invested in real estate for the benefit of the minors, under the equity powers of the court, and the reason and object of art. 348 of the Civil Code.

FISK
v.
FISK.

An analogous proceeding is usually resorted to for the benefit of usufructuaaries, who are unable to give the security required of them by law.  C. C. art. 556.

The plaintiff may proceed in the present suit as the father and the friend of the minors, to liquidate their claim, and cause the amount of it to be brought into court; and, if he cannot ultimately give security, he may provoke the investment of it in real estate or the loan of it on mortgage, to be made by order of court, rendered on the advice of a family meeting, held in presence of the under tutor.

It is therefore ordered that the judgment be reversed, and the case remanded to be proceeded in according to law, with leave to both parties to amend; the defendant and appellees paying the costs of this appeal.