Statement of the Case.
DAWKINS, J.
Seipio Crayton died in the city of Alexandria, La., in 1906, leaving a widow, Amy Crayton, and ten children, five of | whom, to wit, Leroy, John, Herbert, Almeda, and Janie, were minors, and five others, named Lula, Mose, David, Harry and Ann, who were majors at the time of filing this suit. The mother, as the duly qualified natural tutrix of the minors, on November 4,1915, filed this petitory action against defendant to recover the undivided one-half interest of the said minors in some three acres of ground situated in the city of Alexandria, and was subsequently joined herein by all of the majors, except Mose Crayton, by intervention.
Plaintiffs and interveners alleged that the property in question was acquired by their paternal grandfather, David Crayton, by purchase at partition sale on February 4,187S, and who held possession thereof until his death in December, 1880; that Seipio Crayton, the father of plaintiffs and interveners, was residing on said property when their said grandfather died, and continued to live thereon with his family until his death in 1906; that no legal proceedings had ever been taken in the succession of their said grandfather; but that their said father and themselves had been in actual, physical, peaceable, and unequivocal possession of said property for more than 30 years, and had thereby and through inheritance become the sole owners thereof.
It was further alleged that, under a pretended partition sale of date September 18, 1915, defendant’s vendors, R. S. Thornton and W. R. Hathorne, had attempted to acquire the whole of said property, which was well worth the sum of $6,000, for $1,333.-33; that the said entire partition proceeding was null and void for the reason that said minors were not legally represented therein, because of the failure of their mother, Amy Crayton, appointed tutrix ad hoc to represent them, to take the oath as such, and as required by law.
Plaintiffs and interveners further alleged in the alternative, that they had acquired said property by the prescription of 30 years *241 acquirenda causq, which could not be waived or renounced by their said mother or any one else assuming to act for them.
The prayer was for judgment annulling the partition proceedings and recognizing plaintiffs and interveners as the owners in indi-visión of the whole of said property, save the one-tenth interest alleged to belong to their brother and coheir, Mose Crayton, and for rents at the rate of $10 per month since the partition sale.
Defendant denied that the plaintiffs and interveners owned any part of said property, and averred that he had acquired it from Hathorne and Thornton, who had purchased at a partition sale, regularly and legally provoked among the heirs of David Crayton, including plaintiffs and interveners, and persons owning the interests of other heirs of said David Crayton. He admitted that Amy Crayton had not taken the oath as curator ad hoc in the particular proceedings in which the sale had been made, but averred that this was unnecessary, because, in a similar suit filed prior thereto, certain of the heirs of David Crayton had sued for a partition of the same property, making all of the heirs or their privies parties, and that said Amy Crayton had, in said prior proceeding, taken the oath prescribed by law.
Defendant also pleaded estoppel, on the ground that the plaintiffs and interveners had stood by and permitted the property to go to public sale without protest; and that whatever possession they and their said father might have had inured to the joint benefit of all of the heirs of the said David Crayton. In the alternative, defendant asked that he be reimbursed for his improvements placed thereon since his purchase.
The lower court gave judgment for defendant, and plaintiffs and interveners have appealed.
Opinion.
At the death of David Crayton, grandfather of plaintiffs and interveners, in 1880, he left several heirs, besides his son Scipio, but none of the others ever lived on the property now in contest. Scipio and his heirs had been in possession some 35 years before the filing of the suit for partition under which the property was sold. However, the record fairly shows that he never intended to possess it to the exclusion of his coheirs, but frequently acknowledged their interests during his lifetime. The record also reasonably shows that the said Scipio Cray-ton, on different occasions, received assistance from at least some of the other heirs in the payment of taxes upon the property, although it appears to have been assessed in his name and that of his heirs since the death of David Crayton, and he and they had paid the taxes in all hut a few instances.
In these circumstances, what rights, if any, did Scipio and his heirs acquire adverse to-the claims of the other children of David Crayton?
Article 1305 of the Revised Civil Code provides as follows:
“When one of the heirs has enjoyed the whole or part of the succession separately, or all the coheirs have possessed separately each a portion of the hereditary effects, he or they who have thus separately possessed, can successfully oppose the suit for a partition of the effects of the succession, if their possession has continued thirty years without interruption.”
And Article 3548 (C. C.) reads:
“All actions for immovable property, or for an entire estate, as a succession, are prescribed by thirty years.”
It is undisputed that Scipio and his heirs-separately possessed and enjoyed the property in dispute, which represented the entire succession or estate of David Crayton, for more than 30 years. Did the acknowledgment of Scipio of the interest of his coheirs and the acceptance of assistance from some of them in the payment of the taxes prevent or interrupt the running of prescription in his favor? The question seems to be answer *243 ed by article 1304 of the Civil Code, as follows:
“The action of partition cannot be prescribed against as long as the thing remains in common, and such community is acknowledged or proved.”
Scipio’s acknowledgment of the interest of his coheirs was proven. His own conduct, in declining to make any improvements on the property and living in the old hut of his father so many years, corroborates the statements of witnesses, who say that be said he had done so because he did not know which portion would fall to him when' it was partitioned, and this notwithstanding his wife had on several occasions urged Scipio, who was a carpenter by trade, to build a better house.
[1] Plaintiffs and interveners, therefore, •did not acquire the ownership of the entire property by prescription. C. C. art. 1304.
In the briefs, and in oral argument, it was urged that the other heirs of David Crayton (other than Scipio and his descendants) lost all rights which they may have had in his estate, by their failure to accept his succession within 30 years, by virtue of article 1030 of the Civil Code, which reads as follows:
“The faculty of accepting or renouncing a succession becomes barred by the lapse of time required for the longest prescription of the rights to immovables.”
However, it must be remembered that they are the plaintiffs in this suit, and we must look to the pleadings for the grounds upon which they base their claim of ownership. We quote the pertinent article of the petition as follows:
“Petitioner shows that no legal proceedings have ever been taken in the succession of the said deceased David Crayton; that there have been no judgments or other decrees recognizing any one as the heirs of said deceased David Crayton; that said Scipio Crayton, father of said minors, went into possession of the above-described property immediately upon the death of his said father; that the said Scipio Cray-ton, and his said heirs, have enjoyed the separate and exclusive possession of the above described property for more than 30 years; that said possession has been continuous, notorious, peaceable, public, separate, unequivocal, corporal, and as owner for more than 30 years; that, by virtue of said separate possession by said Scipio Crayton and his said heirs of said property under said conditions during said period of time, the said minors have acquired and become and are owners in indivisión of one-half of said property.”
[2] It is thus seen that plaintiffs and interveners (the allegations of the interveners on the point being almost identical) do not base their claims upon the failure of the brothers and sisters of Scipio Crayton to accept their father’s (David Crayton’s) succession during 30 years,, under article 1030 of the Code, but upon his and their separate possession of the estate during that period under article 1305. It might be that the considerations which we have mentioned as preventing the operation of the latter article would not affect the rights of the parties under the former, since the acceptance of a succession presupposes some positive act on the part of those in whose favor the right exists, and does not depend upon the action or inaction of others. However, this prescription, as appears from the article of the petition just quoted, is not pleaded, and the courts cannot supply it.
This brings us to the question of the partition proceedings. Defendant admits, and it is shown by the record, that in the particular proceedings in which the property was sold the mother of the minors plaintiff herein was appointed by the court as curatrix ad hoc, but never took the oath required by article 313 of the Civil Code. This article reads as follows:
“When the minor is without a tutor, any person who has a claim against him may apply to the competent judge to request that a tutor ad hoc be appointed to him, which tutor shall not be bound to give any security, but shall take an oath before the court who has appointed him, *245 to defend tie interests of tie minor according to tie best of iis knowledge.”
It is contended that the omission cannot avail the minors anything for the following reasons to wit:
(1) That a similar proceeding for the partition of the same property had been instituted shortly prior to the one attacked, and in which the said mother of plaintiffs had been appointed tutrix ad hoc and had qualified by taking the oath;
(2) That the said minors and the inter-veners (their major brothers and sisters) were estopped from attacking the said partition proceedings, because they had stood by and permitted the sale of said property without protest;
(S)That the oath was not necessary to the validity of the proceeding;
(4) That the failure to take it does not render the proceeding null or absolutely void, but only voidable, and it was necessary that the purchasers at the partition sale should be made parties to an action to annul, which was not done in this case;
(5) That by the appointment the mother became a de facto tutrix, and the same could not be collaterally attacked;
(6) That the purchasers at the partition sale were protected by the decree of court ordering the sale; and,
(7) That the judgment recognizing the ownership of the coproprietors and directing a partition is res judicata.
We shall consider these contentions in the order mentioned.
[3] 1. Granting that the mother did take an oath as tutrix ad hoc to defend the first proceeding, this did not vest in her the power to represent or defend the minors in another case by different parties, especially where the record shows that all of the heirs and parties necessary to the proceeding were not made parties, and the suit never went beyond the filing stage, was subsequently abandoned, and the later cause filed about a year after-wards and made other parties plaintiffs and defendants. It is argued, of course, that the subject-matter was the same, and, while the parties were actually different, in law they were the same, being transferees of the rights of former heirs and co-owners. But her oath was to properly' defend that suit as then instituted, and it might easily happen that one brought at a later date would involve new and perhaps different issues, such as prescription, the rights of an innocent third purchaser, etc., which were not or could not have been involved in the first. In any event, the provision for permitting a minor to be thus represented is exceptional, made for the speedy administration of justice, must be strictly construed, and cannot be permitted to extend beyond the plain purpose of the law.
For these reasons, we do not think that the mother so appointed had any power to act for the minors in the second proceeding.
[4] 2. We do not think that an unrepresented minor can be estopped by a proceeding to which he was not-legally a party, and against which he was without power or capacity to protest.
[5] 3. We have considered with much interest the ingenious argument of counsel to the point that the oath was not necessary, but are still unable to see how the mandatory provisions of article 313 of the Civil Code can be dispensed with and the minor be lawfully represented in the suit. We see no inconsistency in the absence of a similar provision in the Code of Practice, although in most matters it undoubtedly provides the law of procedure. Full effect can be given to each without conflict.
[6] The further contention that the law docs not require a curator ad hoc to take an oath is not altogether correct, in so far as interdicts are concerned, for the Civil Code provides that all of its provisions with refer- *247 enee to minors are likewise applicable to interdicts. C. C. 415.
This is only one of many well-known safeguards which the law has thrown around these actual and legally incapacitated persons.
Little importance can be attached to the Act No. 219 of 1918, requiring that in future attorneys at law shall be appointed in all such cases, because the lawyer is already under oath to render faithful service to all those whom he may represent.
We conclude that the oath was necessary. Killelea v. Barrett, 37 La. Ann. 865.
[7] 4. We cannot see how a partition proceeding in which a minor is not represented can be said to be only relatively null, any more so than a judgment rendered without citation. The law points out the method of bringing the minor into court, and, if it be not followed, he is no more bound than an adult who is not cited. True, he is within the jurisdiction of the court, and the court has the power to deal with the subject-matter of the suit, but it is powerless to act, in either case, until there has been a lawful citation. Service on one not qualified to represent the minor is no service at all. Kellelea v. Barnett, supra.
Defendant has attacked the decision just cited as being unsound, but it does not appear to have been overruled, and we see no reason for doing so at this time.
The partition proceeding being null, it can, of course, be assailed at any time, collaterally or otherwise.
5. The contention that the mother was a de facto tutrix is disposed of by the finding that the proceeding was an absolute nullity.
[8] 6. The purchaser at such a sale could not be protected by the decree for a partition, any more than one who acquired under an execution upon a fi. fa., issued on a judgment rendered without citation.
[S] 7. A judgment rendered against persons not represented or cited is not res ju-dicata.
[10] The partition being void as to the minors relieves all other parties thereto. R. C. C. 1412.
At his death, David Crayton left five heirs, among them Scipio Crayton, who thereby became the owners in indivisión with the others of a one-fifth interest in the property in dispute. However, one of Scipio’s ten children had previously sold to Hathorne his interest in the property, and was not a party plaintiff or an intervener.
For the reasons assigned, the judgment appealed from is annulled and reversed, and it is now ordered adjudged and decreed that the plaintiffs and interveners be and they are hereby recognized as the owners in indivi-sión with defendant of a 9/so interest in the property involved in this suit. It is further ordered that the rights of plaintiffs ánd in-terveners to claim rents and revenues, and of the defendant for the costs of the improvements placed upon the property, be and the same are hereby reserved. Defendant to pay the cost of both courts.
O’NIELL, J., dissents from the ruling that the plaintiffs should have indicated in their pleading the different articles of the code on which they base their plea of prescription of 30 years.