HARDY, Judge.
This suit was instituted by plaintiffs who are seeking recovery of an undivided one-half interest in and to a certain described tract of land in Morehouse Parish, Louisiana. After trial there was judgment in their favor, from which defendants have appealed. The appeal - was directed to the Honorable the Supreme Court of Louisiana, which declined jurisdiction and transferred the appeal to this Court, 220 La. 481, 56 So.2d 843.
The written reasons for judgment advanced by the then District Judge, who is now our esteemed colleague of this Court, so ably set forth the facts, the law and the proper conclusions that we do not feel we can improve upon his opinion, which, accordingly, we set forth as follows:
“William F. Martin and Lottie Ozelle Martin Sanford, plaintiffs herein, bring thus suit to recover an undivided one-half interest in 119.56 acres of land sold May 10, 1915, by defendant Arthur C. Carroll to the Crossett Lumber Company, who transferred to Crossett Land and Development Company which later assigned to Crossett Timber and Development Company,- the present title claimant.
“Plaintiffs have shown that the property was acquired by their father, William B. Martin by patent from the United States August 20, 1907, at which time he was married to and residing with Jeanette Cameron Martin. Of this, the only marriage of William. B. Martin, but two children were born, Lottie Martin, October 8, 1901, and William F. Martin, August '5, 1909. Mrs. Jeanette Martin died intestate August 5, 1909.
“This controversy arises from alleged irregularities in a partition proceeding and judicial sale by which Carroll acquired the property. In May, 1914 William B. Martin sold ‘forty acres of land * * * ’ as described to Carroll, who on October 6, 1914, instituted a suit against William B. Martin, individually and as alleged Natural Tutor of plaintiffs in order to bring about a partition by licitation of said property. The petition therein was signed by Arthur C. Carroll, in proper person, but in fact was prepared by Mr. David Todd, an attorney, who purported to represent William B. Martin, individually and as Natural Tutor for said minors and who on October 8, 1914 acknowledged citation and service of the petition. After the filing of the petition, experts were appointed by the Court, and they reported the property was not divisible in kind. Later, a family meeting,’ on order of the Clerk, the Judge being absent, was convened with William B. Martin, as Tutor, and L. F. Leavell, as Under Tutor in attendance. This meeting as reflected by the proces verbal thereof also recommended that the sale be for cash and public sale. On November 2, 1914, the Court entered a judgment decreeing a sale, which after due advertisement was made on December 12, 1914.
“Plaintiffs’ contentions are that the judgment rendered on November 2, 1914, in the proceedings entitled, ‘Arthur Carroll vs. W. B. Martin, Individually and as Natural Tutor’, No. 9292 on the docket of the then Sixth Judicial District Court (presently Fourth Judicial District Court) is null and. void: (1) for want of citation -and (2) because not based upon a legally constituted family meeting; and as a consequence of the null judgment, the sale as made by the Sheriff on December 12, 1914 is ineffective, null and void.
*160 “The principal defenses offered are a plea of estoppel and that of the prescription of Articles 3543, 3542, 3478, and 3499 of the Civil Code.
“The record reflects that one James M. Chancellor purchased from William B. Martin forty acres of land hot described as being undivided, which same interest was in time sold to Arthur C. Carroll, both of said deeds being recorded and later recognized as being insufficient to convey the intended acreage, because búrdened with one half ownership of the minors; whereupon all three parties on May 10, 1914, executed a correction deed to give to Carroll forty acres from the whole, undivided. Ten days later W. B. Martin executed a deed conveying to the Cros-sett Lumber Company 79 acres out of the 119.56, not described as undivided.
“On October 9, 1914, Carroll filed the suit for a partition against William B. Martin, Individually and as Natural Tutor. The suit described Carroll as the owner of forty acres in indivisión, Martin 19.8 acres in indivisión and the minors 59.78 acres in indivisión. The petition represented Martin as the Natural Tutor of the minors, alleged the property could not be divided in kind without great loss and damage to the co-owners, and prayed for the appointment of experts to report to the Court as the most advisable mode of effecting said partition. Citation and service of the petition was acknowledged October 8, 1914 by ‘David Todd, Attorney for William B. Martin, Individually and as Tutor of the minor children mentioned.’ On October 10, 1914, an answer was filed by Mr. Todd on behalf of William B. Martin Individually and as Natural Tutor, averring that the property was not susceptible of partition in kind and likewise praying for the appointment of experts. Thereupon, the Court appointed James M. Chancellor and one Thomas Jones as experts for the purpose sought and these filed their report dated October 16, 1914. On October 19th, Martin, in his capacity as Natural Tutor of said minors, secured an order convening a family meeting to discuss the terms for the sale of the minors’ interest in the partition. The next document in this chronological statement is the oath of William Martin as Natural Tutor of said minors taken on October 24, 1914 and filed the same date. L. F. Leavell was sworn as Under Tutor on October 28, 1914. The family meeting was held three days later and was attended by Martin and Leavell. On November 2, 1914, the testimony of J. W. Jones whs taken in open Court and is to the .effect the property was not divisible in kind. Judgment was then entered ordering the sale as recommended by the family meeting. This sale was held on December 12, 1914, but the Sheriff’s deed was not executed until May 10, 1915. Arthur Carroll was named therein as purchaser for $360.00. On this same date he conveyed the same property to the Crossett Lumber 'Company for a recited consideration of $340.00, which deed was recorded May 19, 1915. On June 5, 1915, William B. Martin again took the oath of Natural Tutor to the minors, Lottie Ozelle Martin and William Felton Martin and on the same date William B. Martin was appointed and confirmed as Natural Tutor and H. F. Benson appointed as Under Tutor to said minors.
“The foregoing substantially completes the record as filed, and I am sure every effort was made to produce the entire partition and tutorship proceedings. It is perhaps true that some of the rec-cords may have been lost, but it seems equally true that William B. Martin did not take the oath as Tutor prior to October 24, 1914, after the proceedings were well under way, and further, there is no evidence of an appointment by the Court until June 5, 1915. The record does not reflect the issuance of letters of tutorship.
“Article 313, C.C. provides that where a minor is without a tutor, one who has a claim against him may have a tutor ad hoc appointed, who upon taking an oath to defend the interest of *161 the minor, is then qualified. See also Article 116, C.P. Generally, our Courts have held appointment of the natural tutor is absolutely essential under C.P. Article 949. Fisk v. Fisk, 2 La.Ann. 71; Tutorship of Hughes, 13 La.Ann. 380; Berlachaux’s Case 72539. But see contra Stilley v. Stilley, 20 La.Ann. 64 where appointment was said to be unnecessary though oath must be taken, and Gaston v. Rainach, 141 La. 162, [74 So. 890], where it was said the absence of an express order appointing- a tutor may be supplied by other proceedings equivalent to or implying an order. In any event, however, a natural tutor must take an oath before he can act. Article 334, C.C., Mayes v. Smith, 11 Rob. 503, Mitchell v. Cooley, 12 Rob. 636; Wheeler v. Rodriguez, 13 La.App. 97, 126 So. 715; In re Interstate Land Co., 118 La. 587, 43 So. 173; the Civil Code prohibits delivery to the tutor of letters of tutorship until he shall have complied with the law, and enjoins him from interfering with the administration of the property of the minor except for the purpose of preserving it, declaring he is not recognized, confirmed or appointed, nor is he permitted to act as tutor, until the judge renders and signs a decree authorizing letters of tutorship to issue, Art. 335, C.C.
“It clearly follows that as disclosed by the record the minors were unrepresented in the partition proceedings, including the family meeting held October 31, 1914, and the judgment of November 2, 1914, and the adjudication of the property resulting therefrom was an absolute nullity. Crayton v. Waters, 146 La. 238, 83 So. 540; Levy v. Simon, 152 La. 857, 94 So. 421, 424; Latham v. Glasscock, 160 La. 1089, 108 So. 100, 102; Powell v. Larauce, 179 La. 751, 155 So. 13; Stoma v. Smith, La.App., 172 So. 202; Scaife v. Jones, 156 La. 5, 99 So. 890.
“Defendants plead that ‘the plaintiffs are and should be equitably estopped to question the title of the respondent, or any of its authors, for the reason that they have permitted more than thirty-two years to elapse since the date of the sale herein described.’ The plea is untenable. Nielson v. Haas, La.App., 192 So. 716; Snelling v. Adair, 196 La. 624, 199 So. 782; Pan American Prod. Co. v. Robichaux, 200 La. 666, 8 So.2d 635; Long v. Chailan, 187 So. 507, 175 So. 42.
 “There remains only to consider the several pleas of prescription herein filed as barring plaintiffs’ claims of ownership. The plea of two years under Article 3543 is by the provisions of said article a limitation of five years where the ownership of minors or interdicted persons are affected. It follows that inasmuch as the minors at the time Carroll instituted his suit were not represented by a tutor regularly appointed, a tutor ad hoc, or some other person so designated by law to defend his rights, the entire proceedings were of no effect. The minors were in the same position as a person not cited. The belated efforts to qualify could not breathe life into the proceedings prior thereto, and if these be stricken as null ab initio, as they were, subsequent acts predicated on them must fail. When a judgment and adjudication result from acts absolutely null, the prescription of Article 3543, C.C. cannot follow. The same rule applies to the prescription of Article 3542, C.C. of five years. Crayton v. Waters, 146 La. 238, 83 So. 540; Dickey v. Pollock (La.App.) 183 So. 48; Levy v. Simon, 152 La. 857, 94 So. 421; Latham v. Glasscock, 160 La. 1089, 1097, 108 So. 100; Powell v. Larance, 179 La. 751, 155 So. 13; Stoma v. Smith, La.App., 172 So. 202; Scaife v. Jones, 156 La. 5, 99 So. 890. See also Brewer v. Brewer, 145 La. 835, 83 So. 30.
“The plea of thirty years prescription (Art. 3499, C.C.) must also be overruled. It has been suspended during the minority of the plaintiffs. Thus, this suit was filed July 16, 1948, and by reference to the record it will be observed that Lottie Ozell Martin was born October 8, 1901 and William *162 F. Martin August S, 1909. The thirty years did not begin to run, therefore, until 1922 and 1939 respectively, and the suit was, therefore timely filed. See Tyler v. Lewis, 143 La. 229, 78 So. 477; Tillery v. Fuller, 190 La. 586, 182 So. 683, 696.
“Defendants earnestly rely on the prescription of ten years under Article 3478. This Code article states that 'he who acquires an immovable in good faith and by just title prescribes for it in ten years * * * ’. On May 10, 1915, Carroll acquired the property in dispute at the partition sale and on the same date executed a deed to the Cros-sett Lumber Company. It is urged that by reason of the deed from Carroll and certain acts of possession the Crossett Company has held the property more than ten years as prescribed by Article 3478. The acts constituting physical possession are that in 1915 land lines were run, a spur track was built in 1916, and the timber again cut in 1939, and since 1939 it has been cut over several times. Various deeds, leases, right-of-ways, and contracts, together with testimony of fire protection and reforestration practices wherein trees to be cut and marked were introduced.
“There appears in evidence a completely executed but unrecorded instrument purporting to be a sale from W. B. Martin unto the Crossett Company of 79 acres of the land in question. This deed bears the date of May 20, 1914, and was proven before the Clerk of Court. If the efficacy of this deed be accepted, the Crossett Company was in fact a co-owner of a part of the property sold in the partition. It is further argued that Carroll was an interposed party acting for Crossett. The deed seems to indicate this may have been true. Regardless of the conclusion, it is clear that Crossett knew of and was interested in the proceedings to acquire the property for a right-of-way for its tram road. This was testified to by Mr. Wilcoxen. The record warrants the finding that the adjudication to Carroll was equivalent to a delivery to Crossett. A partition deed is merely declaratory, and is not translative of ownership. Hence, it cannot serve as a basis for a prescriptive title, irrespective of whether the parties to the partition were co-heirs or co-proprietors. See Tyson v. Spearman, 190 La. 871, 183 So. 201; Little v. Barbe, 195 La. 1071, 198 So. 368; Kernan v. Baham, 45 La.Ann. 799, 13 So. 155; Peoples Bank of New Orleans v. David, 49 La.Ann. 136, 140, 21 So. 174; Pearce v. Ford, 124 La. 851, 50 So. 771; Tillery v. Fuller, 190 La. 586, 182 So. 683.
“Under Article 3484 the source of the prescriptive title must be just, that is to say, a title which the possessor may have received from any person whom he honestly believed to be the real owner, provided the title were such to transfer the ownership of the property.
“The record discloses evidence that is persuasive that the Crossett Company knew 'Carroll was not the real owner of the entire tract of land adjudicated by deed on May 10, 1915. In the first place, it, Crossett, had an unrecorded deed from William B. Martin to 79 acres, executed ten days after Arthur C. Carroll had received a deed from Martin to the 40 acres interest. It is admitted that the agent for Crossett in the transaction sent Carroll to Mr. Todd with reference to the minors’ interests. It is further shown that even after the deed from Carroll to Crossett May 10, 1915, further efforts were being made by someone to qualify a tutor and cause the tutor to take a new oath and for letters of tutorship to issue, important legal steps apparently omitted prior thereto. Thus, the purchaser from Carroll had every reason to doubt that all sources of title were contained in the deed from Carroll. Such knowledge of the insufficiency of Carroll’s title rebuts the presumption otherwise in favor of a just title. Knight v. Berwick Lbr. Co., 130 La. 233, 57 So. 900.
“For the foregoing reasons there was no foundation upon which the ten year prescription could be erected, and *163 therefore the prescriptive plea of ten years must be overruled.”
We note in brief of learned counsel for appellants, in support of the defense of prescription of five and ten years under Articles 3542 and 2221 of the Revised Civil Code, that considerable reliance is placed upon the case of Fried v. Bradley, 219 La. 59, 52 So.2d 247, which was decided by the Supreme Court in May of 1950, after judgment in the case before us was rendered in February of the same year. Study of the learned and .exhaustive opinion of the Court in the Fried case discloses the fact that the prescriptive period provided in ’Civil Code Articles 2221 and 3542 is applicable in the defense of actions for the nullity or rescission of agreements, which conclusion is clearly justified by the wording of the articles themselves. The opinions of the French authorities and commentators which are discussed in the cited case adequately support this conclusion. Another elaborate discussion of the subject is found in 21 Tulane Law Review, 438 in which the French interpretation of Article 1304 of the French Civil Code, which is practically identical with Article 2221 of the Louisiana Civil Code, is considered at length.
We think the issue tendered in the present case is to be distinguished from that which was under consideration in the Fried case inasmuch as here we have no involvement of an agreement between parties, which despite the nullity thereof is susceptible of ratification, either express, implied or invoked by lapse of time. Rather we are concerned with the efficacy, if any, of a juridical act in which the parties plaintiff had no voluntary concern nor voice. Certainly we do not think it can be said that the invalid partition proceedings constituted any kind or nature of agreement insofar as these plaintiffs are concerned. The plaintiffs were not parties to the act, which was a purported sheriff’s sale, not a conventional agreement. It is quite true that under the existing circumstances it was proper to invoke the aid of legal provisions in effecting a disposition of the property in which minors were vested with an interest. But the proceedings were stricken with a radical and absolute nullity, ab initio, by reason of the failure to conform to the provisions and procedure established by law. It cannot now be contended that these parties plaintiff are bound by lapse of time to an implied ratification of an absolute nullity in connection with an act which cannot possibly be construed, by any definition, as constituting an agreement.
For the reasons assigned the judgment appealed from is affirmed at appellants’ cost, and plaintiffs, William F. Martin and Lottie Ozelle Martin Sanford, are specifically recognized as the owners of an undivided one-half interest (in the proportion of an undivided one-fourth to each) of the following described property containing 119.65 acres, more or less, located in More-house Parish, Louisiana:
The Southwest Quarter of the Northeast Quarter (SW% of NE%) and the West Half of the Southeast Quarter (W½ of SE14) of Section Twelve (12), and the Northwest Quarter of the Northeast Quarter (NWY4 of NE)4) of Section Thirteen (13), Township Twenty-three (23) North, Range Five (5) East, of the Louisiana Meridian.
KENNON and GLADNEY, JJ., recused.