. Statement of the Case.
MONROE, C. J.
Mrs. Fannie Wheeler, widow of J. H. Wheeler, and her two daughters, Mrs. Flaherty and Miss Anna Wheeler, prosecute this appeal from a judgment rejecting their demands against Mrs. Jerusha Braselton, Mrs. Elizabeth Emerson, Mrs. Anna Norton, R. D. Martin, Ernest C. Mann, and Miss Lillian Mann, that petitioners be decreed the sole owners of the N. % of S. E. % and S. % of S. W. % of N. E. % of section 1C, township 21 north, range 7 west, containing 100 acres, in.the parish of Claiborne, and condemning said defendants to pay various sums of- money received by them as their shares of the proceeds of the lease of said land for oil, gas, and other mineral development.
The facts upon which those demands are predicated, as disclosed by the record, are as follows:
On January 17, 1867, R. B. Mann, Sr. (then living under the régime of the community with Ins wife, Lucy), bought from. E;. H. Jones (who had bought from the parish treasurer) the section 16 thus mentioned; and, on December 20, 1S79, he sold the entire tract to Thornton Bridgeman, who, on December 26, 1879, sold the N. % of N. W. % to Henderson Jamison, and, on January 19, 1880, sold the entire tract without warranty to C. T. Mann and Robert B. Maun, Jr., after which, on January 4, 1SS2, Jami-son sold the N. % of N. W. % (acquired from Bridgeman) to R. B. Mann, Sr.; and, in or about the year 1887, R. B. Mann, Sr., died, leaving a widow and seven children, and the 80 acres thus acquired from Jami-son, as his estate (in community). The seven children were R. B. Mann, Jr.; C. T. Mann, Fannie (now widow of J. H. Wheeler), Jerusha (now Mrs. Braselton), Lizzie, wife of E. B. Martin, Sarah, wife of James AVomble, and Mattie.
*869 On September 7, 1SS7, R. B. Mann, Jr., conveyed to C. T. Mann an undivided half interest in the subdivision of the section 16 in question, described as the S. W. 14 and S. V2 of N. W. 14 and N. IV. 14 of N. E. %, 140 acres more or less, “in exchange for” the E, Vi of section 16, less the N. W.14 of N. E. 14, “140 acres more or less.”
Thereafter Mattie died, and her interest in her father's estate devolved on her mother, brothers, and sisters; R. B. Mann, Jr., died, leaving a widow (Lela V. Mann) and two minor children, Ernest O. and Lillian; Mrs. Womble died, leaving a'son, T. D. Womble, and two grandchildren, Dillie Black (Wise) and Pinkey Black, children of a deceased daughter; and in or about 1900 C. T. Mann died, and his estate, consisting of S. E. 14, E. % of N. E. 14, S. W. 14 of N. E. 14, and an undivided interest in N. Vz of N. W. 14 (inherited from his father) of said section 16, which estate devolved upon his mother, surviving sisters, and the descendants of his deceased brother and sister; and, on October 20, 1901, Mrs. Lucy Mann died, leaving as her heirs her daughters, the Mesdames Braselton, Wheeler, and Martin, her grandchildren, Ernest O. and Lillian Mann, children of R. B. .Mann, Jr., her grandson, T. D. Womble, and her great-grandchildren, Dillie Black Wise and Pinkey Black, grandchildren of Mrs. Sarah Womble. and, according to the averments of the petition, leaving as her estate an undivided interest in the N. % of N. W. %, E. % of N. E. %, S. W. 14 of N. E. 14, and S. E. 14 of said section 16, township 21, range 7.
On October 25, 1901, the three daughters, Wheeler, Braselton, and Martin, Mrs. Lela V. Mann, widow of R. B. Mann, Jr., and natural tutrix of the minors, Ernest O. and Lillian, and Ernest C. (who was then 20 years old) individually, assembled together and agreed that the estate so left should be disposed of as follows (the descriptions always referring to the section 16 in question), to wit:
To Mrs. Braselton the E. Vz of N. W. 14; to Mrs. JVheeler the S. Vz of S. E. 14 ; to Mrs. Martin the N. Vz of N. W. 14; to Ernest O. Mann the N. Vz of S. W. 14 of N. E. 14. Mrs. Lela V. Mann, as mother and natural tutrix of her minor children, executed an act conveying to the heirs of R. B. Mann, Sr., and Lucy Mann all the interest of the children in the estates of the decedents and of O. T. Mann, acknowledging that R. B. Mann, Jr., had received therefrom all that he was entitled to, and binding herself that the minors should ratify and approve her action. The instruments that were executed by the parties for the carrying out of their agreement are identical in form, bear the same date (October 25,1901), and each participant in the agreement receives from the others the tract selected by her (or him). Thus Mrs. Martin, Mrs. Wheeler, and Mrs. Mann, tutrix, join in the conveyance to Mrs. Braselton of the “E. Vz of' N. E. % of section 16”; Mrs. Braselton, Mrs. Wheeler, and Mrs. Mann, tutrix, join in conveying to Mrs. Martin the N. Vz of N. W. 14 of section 10, etc., and each of the conveyances concludes with the following recital, to wit:
“This sale and transfer is made for the sum and price of $200 in the transfer of other lands belonging to the estates of R. B. Mann, Sr., and Mrs. Lucy Mann and O. T. Mann, deceased, in which the said-has an interest, making her, with what she has already received, equal with the other heirs.”
The petition cdntains the allegation:
“That it was verbally agreed by and between the said heirs then present, and making-said selections and acknowledgments, that the remaining 100 acres, ‘described as the north half of the southeast quarter (N. Vz of S. E. 14) and south half of the southwest quarter of the northeast quarter (S. Vz of S. W. 14 of N. E. 14), * * * should be set aside and left intact; as the portion of said estate falling to the heirs of Sarah Womble, deceased.”
*871 It seems to be conceded that R. B. Mann, Sr., had given to R. B. Mann, Jr., land at least equal in value to the tracts, respectively, which were thus selected by the'other heirs, and there has been no complaint by his children, who attained their majority as far back as 1902 and 1904, of the action taken by. their mother and tutrix.
It is shown that, on April 7, 1800, R. B. Mann, Sr., donated to his daughter, Sarah, then wife of James Womble, 60 acres of land in section 17 of township 21, range 7, the act of donation containing the recital (following the description), to wit:
“Rated in this act at $240, there being 60 acres, more or less, to be free from collation for partition in the final settlement of his estate, but for which his said daughter or her legal representative is to account at the above-stated price.”
We understand that the parties to the agreement of October, 1901, went into possession, respectively, of the tracts then reciprocally conveyed to them, and, with the exception of Mrs. Martin, who is said to have sold the tract selected by her (and who died in 1906, leaving as her heirs her daughters Mrs. Emerson and Mrs. Norton, and her son, R. D. Martin, herein made defendants) that they have so remained to the present time; and it is shown that, on May 2, 1902, J. H. Wheeler bought from the heirs of Mrs. Womble, acting through E. H. McClendon, their attorney in fact and the attorney in fact of the guardian of the minors appointed at the place of their domicile, in Arkansas, all of the rights, titles, and interests in and to the successions of R. B. Mann, Sr., Charles T. Mann, and Lucy Mann; that Wheeler and his family at once went into possession under that title of the tract of 100 acres; and that they (his family after his death) have so remained since that time, paying the taxes on the property, with no objection from the defendants, no assertion by them of any interest in said tract, and no assertion by the Wheelers of any interest in the tracts occupied by the others.
It is further shown that at some time pri- or to the institution of this suit (in October, 1919), propositions were made to plaintiffs to lease the tract in question for oil and gas development, but that they fell through because their title appeared unsatisfactory; that the matter was then discussed between the oil men and E. C. Mann, to whom it was suggested that he obtain powers of attorney from the different claimants, authorizing him to make such a lease; that, in that situation, he received an intimation from Mrs. Wheeler that she was willing to consider the question, and that a meeting was arranged at Mrs. Wheeler’s residence, at which there were present Mrs. Wheeler, Miss Anna Wheeler, Mrs. Braselton, and E. C. Mann, and as a result of which a second meeting took place within a few days at the office of defendants’ legal adviser, at which the same parties were present, as also Sirs. Elaherty, who had*come from Arkansas for the occasion, and defendants’ legal adviser; the result of the meeting being that the parties claiming interests in the land in dispute, including those not present, then or thereafter, signed powers of attorney practically identical in terms, declaring that the Wheelers owned an undivided two-fifths interest in the tract, and that the others owned the remaining undivided three-fifths, and that they authorized E. C. Mann to make an oil and gas lease thereof. The instrument executed by Mrs. Wheeler, reads, in part, as follows:
“ * * * Appeared Mrs. * * * Wheeler, * * * who declared that she is the true and lawful owner of an undivided one-fifth interest in and to [describing the 100-acre tract] which she acquired by inheritance from her brother, G. T. Mann, and that she, with her daughters, Mrs. Kitty Elaherty and Miss Anna Wheeler; together, own one-fifth, acquired by J. H. Wheeler, their deceased husband and father, from the children and only heirs of Mrs. Sarah Womble; * * * and Mrs. Je *873 ruslia Braselton, a sister of O. T. Mann, owns one-fifth, and R. D. Martin, Mrs. Elizabeth Emerson, and Anna Norton, children and only heirs of Mrs. Elizabeth Martin, deceased, a sister of O. T. Mann, together own one-fifth; and E. O. Mann and Miss Lillian Mann, children and only legal heirs of R. B. Mann, Jr., brother of O. T. Mann, together own one-fifth; said brothers and sisters of the said O. T. Mann being his only legal heirs; and that she does by this act and these presents * * * appoint E. O. Mann * * * his (her) agent and attorney in fact, to let, lease, demise, and otherwise contract relative to said land for the purpose of having it developed for oil, gas, and other minerals, * * * for such considerations, royalties, rentals, and on such terms and subject to such obligations on the part of the lessee as he, our agent and attorney in fact, may deem proper and adequate. * * *”
The instrument executed by Mrs. Flaherty and Miss Anna Wheeler specifies their interests as one-twentieth each. Some three months later (August 12, 1919) B. C. Mann, as agent and for himself, having negotiated an oil and gas lease, it was duly signed, and, it being one of the conditions that the lessee (Gladys Belle Oil Company) should pay $32,-500 in cash, and that amount having been collected by E. O. Mann, agent, etc., he paid it over (after deducting a fee or commission, paid or payable to a broker) to the several lessors as their interests appeared — the Wheelers accepting their proportion, respectively, without objection, but thereafter, in October, 1919, bringing this suit, in which, setting forth the facts hereinabove detailed, and the alleged verbal agreement of October, 1901, they further allege that they are the sole owners of the tract of 100 acres, and that defendants are estopped to deny their ownership by reason of their having taken possession, as owners, of the tracts selected by them, pursuant to said verbal agreement, and having acquiesced since then in plaintiff’s possession, as owners, of the 100-acre tract. They further allege that, in executing the powers of attorney herein produced, containing statements to the effect they own an undivided two-fifths interest and their coheirs the remaining undivided three-fifths interest in said 100-acre tract, they were led into error as to their legal rights by E. G. Mann and his agents; that “pursuant to the authority conferred upon him by said powers of attorney, the said Ernest O. Mann,” as agent and attorney in fact for Mrs. Fannie Wheeler, Miss Anna Wheeler and Mrs. Kittie Flaherty, and acting for himself, individually, joined Mrs. Jerusha Braselton, Mrs. Emerson, Mrs. Anna Martin, R. D. Martin, and Miss Lillian Mann in the execution of an oil, gas, and mineral lease in favor of the Gladys Belle Oil Company” covering said tract; that, of the $32,500 realized therefrom, the defendants (naming thém) have “wrongfully and illegally collected and received” various amounts (specifying them), attributed to them as their shares, and are indebted to petitioners for those amounts; that the said Ernest C. Mann is indebted to petitioners in the further and additional sum of $870, as proceeds of said lease, retained by him on the pretext of having paid same to some real estate agent for services in. securing a purchaser of said lease, which said payment, if made at all, was made without any authority from your petitioners.
Defendants filed exceptions of no cause of action based upon the ground that the allegation of a verbal agreement for the partition of real estate is not susceptible of proof, which exceptions having been overruled, Ernest O. and Lillian Mann admitting and denying the various allegations of the petition, including denials that any of the transactions alleged were sufficient in law to devest them of any of the property described, or that any of it was legally selected or set aside for them as their portion of the estates referred to, or that they were parties to any agreement whereby the tract in dispute was to be set aside to the heirs of Sarah Womble, or that they are indebted to plaintiffs in any *875 sum whatever, and alleging that the proceeds of the lease were disposed Of in accordance with plaintiffs’ wishes, and E. O. Mann further alleging that-the amount paid to the real estate broker was paid with plaintiffs’ knowledge and consent. The other defendants allege that the transactions of October, 1901, constituted only a partial partition, and “deny that there was even an intention to complete, ratify, confirm, or validate” the same; and they specially deny that-plaintiffs were led into any error in signing the powers of attorney, alleging that same were prepared after agreement and at their suggestion.
For the purposes and before the trial of the case, plaintiffs’ counsel obtained an order for the taking of the testimony of Mrs. Wheeler at her residence, of which due notice was given to defendants’ counsel, who having failed to appear at the time and place ajjpointed, the testimony was taken without cross-examination and introduced in evidence. It reads in part as follows:
“Q. Why did you sign the pow.er of attorney containing the statement that the defendants owned an interest in the land? A. I objected to it and signed it against my will. Q. Did you suggest that they put those statements in the power of attorney? A. No, sir; I had nothing to do with it. Q. Did any one tell you when you signed the power of attorney that you didn’t own all of the land? A. No, sir; they spoke of that beforehand. Q. Did they tell you that before you signed the power of attorney? A. Yes, sir; Jerusha said they owned an interest> in the land, but they just wanted the royalty, and didn’t want the land.
* * * Q. Did Ernest Mann tell you that he owned an interest in the minerals and oil under the 100-acre tract? A. He and Jerusha said they only wanted the royalty, and did not want the land. Q. Was it your intention, in signing this power of attorney, to deed him an interest in the minerals? A, It was not; it was ours, for we had bought and paid for it. Q. Did you authorize Ernest Mann to pay $870, or any commission; to sell the lease? A. No, sir.”
Mrs. Wheeler was not asked, and gave no testimony, concerning the transactions of October, 1901 — the alleged “verbal agreement” not having been mentioned in her examination. Mrs. Flaherty, who testified on the stand, threw no additional light upon the question of the attitude of the Wheelers or of the understanding with which they signed the powers of attorney. She was averse to signing, because she considered that her family were the sole owners of the 100-acre tract; and, although she testifies that she signed because she was asked to do so by Mrs. Braselton' and E". O. Mann, and to Id to do so by her husband, it is evident that she had plenty of advice, and was fully informed of the contents of the instrument, and that the real reason for her signing was that she became convinced that, if she did not sign, there would probably be litigation and delay which might result disastrously, and that it would be more profitable, from a financial' point of view, to have the land developed at once and divide the proceeds with the other claimants than to-litigate with them in the hope of defeating their claim after a delay of uncertain duration.
Mrs. Braselton also gave her testimony from the stand, to the following effect, to-wit:
Her mother died October 20, 1901; after the funeral, she and her sisters, Mrs. Blartin and Mrs. Wheeler, and her sister-in-law Blrs. (Widow) R. B. Blann, Jr., held a meeting, and concluded to divide the estate that was in the name of her brother, O. T. Blann, but should have been in the name of her-mother, for the reason, that after her brother’s death, her mother paid off his widow (meaning as we infer that' her mother bought the widow’s community interest), “which caused her to retain the land”; “the very first plank in the meeting,” they decided to con *877 sider the land as being still in her father’s name “as he had already given out to the heirs a part of the land”; so they settled on that basis, calling it her father’s land, and in making the division set aside 100 acres that they intended to divide when they found the Womble heirs; they never gave up their claim to that tract, but were “to hold a second meeting and divide up the land with the Womble heirs.”
“We [quoting] had a kindly feeling for our sister, and we thought, instead of carrying if into court, and contending for the land, we would let her hold it during her lifetime; it would revert to our heirs after a while,” etc.
She testified that Mrs. Wheeler, Mrs. Martin, and herself took, or received, each SO acres in order to put them on an equality with the heirs of R. B. Mann, Jr., and Mrs. Womble, to whom land had been donated by their father.
Concerning the meeting at Mrs. Wheeler's residence in April, 1919, she testified that they then discussed the giving of the powers of attorney, and what should be put in them, and reached the agreement that was given effect two or three days later in the execution of those instruments; that the instruments were dictated and read in the presence of Mrs. Wheeler, Miss Anna Wheeler, Mrs. Flaherty, E. C. Mann, and herself; also defendants’ counsel, Mr. Goff. She further testified that, in 1902 or-1903, a deed from the Womble heirs to Mr. Wheeler of the 100-ac-re tract was sent to her for signature, 'and that she refused to sign it.
E. C. Mann testified that he made no misleading statement to the Wheelers; that Mrs. Wheeler and Miss Anna Wheeler expressed their willingness at the meeting at Mrs. Wheeler’s to accept two-fifths of the 100-acre tract as their part, leaving three-fifths to the others, and that two days later th,ey signed the powers of attorney, after they had been read in the presence of all parties; that' Mr. and Mrs. Flaherty, at first objected to signing the powers of attorney, and discussed the question of signing the lease, themselves, rather than through an agent; the ground of their objection, as understood by the witness, being that they were indisposed to trust any one else with the handling of the money that might be coming to Mrs. Flaherty. Mr. Mann further testified that, during the three months which elapsed between the signing of the powers of attorney and the leasing of the property, and during the two months which followed, prior to the institution of this suit, and while the $32,500 was being received and distributed, he heard no objection from any quarter to the arrangement that had been made.
Opinion.
[1] In the absence of Mrs. Womble or her heirs, the agreement of October, 1901, between her three sisters, her sister-in-law, and her minor nephew and the reciprocal conveyances between them of property in which she' or her heirs owned an undivded one-fifth interest in no manner affected that interest, or her or their right to sue for a partition of the entire property at any time within thirty years, and, though she or they had appeared and gone into possession of the 100-acre tract, the legal situation was, and is, bound to remain unchanged during that period, unless changed by some agreement to which all the co-owners, being sui juris, or, if minors, properly represented, are parties. Such, in effect, are the plain provisions of the Civil Code, to wit:
“Art. 1297. * * * It cannot-be stipulated that there never shall be a partition of a succession of a thing held in common. Such a stipulation would be null and of no effect.”
“Art. 1304. * * * The action of partition cannot be prescribed against, as long as the thing remains in common, and such community is acknowledged or proved. Thus, though coheirs have enjoyed their hereditary effects in common for a hundred years and more, *879 without making a division, any of them'can, .at any time, sue for a partition.
“Art. 1305. * * * When one of the heirs has enjoyed the whole or part of a succession separately, or all of the heirs have possessed separately each a portion of the hereditary effects, he or they who have thus separately possessed, can successfully oppose the suit for a partition of the effects of the succession, if their possession has continued thirty years, without interruption.
“Art. 13ÓG. * * * If there be but one of the heirs who has ■ separately enjoyed a portion of the effects of the succession during thirty years, and all the other heirs have possessed the residue of the effects of the succession in common, the action of partition among the latter will always subsist.”
[2] Plaintiffs, made no attempt to prove the verbal agreement alleged- by them, though they took the testimony of Mrs. Wheeler. Mrs. Braselton called by defendants, denied that there had been such an agreement. No one pretends that the Wombles were parties to. any agreement whatever; and- there could have been no partition, whether definitive or provisional, of property of which they were part owners without giving them an opportunity to be heard.
• It is clear, then, that there is ho question here presented of the right to rescind a partition, or of the prescription of an action having that purpose in view, since there has been no partition; and it is equally clear that the separate possession enjoyed by these litigants, respectively, and the reciprocal acquiescence by each in the possession of the others, has not changed their ownership in indivisión to an ownership in severalty, and could not do so until 30 years of such continued separate possession shall have elapsed from the beginning of the same, and hence that their possession and acquiescence cannot be held to estop them, or any of them, from insisting that all of the property inherited in indivisión is-so held at this time or from, demanding ¿hat a partition be now made. ' I
On the other hand, in April, 1919, following the possession which they set up as the basis of their alleged title to the whole of the 100-acre tract, plaintiffs signed authentic acts in which they declared that they owned but two undivided fifths interest in that tract and that defendants owned in indivisión with them, the remaining three-fifths, and in which they authorized E. O. Mann to lease the land for mineral development upon the basis of that ownership; and it is shown that though about three months elapsed after these powers of attorney were executed before the agent thus appointed was able to effect the lease, no step was taken during that time to withdraw the authority which had thus been conferred on him. To the contrary, plaintiffs allege in their petition;
“That, pursuant to the authority conferred upon him by the said powers of attorney, the said-Ernest O. Mann, as agent and attorney in fact for [naming petitioners], and acting for himself individually, joined [naming the other defendants] in the execution of an oil, gas, and mineral lease,” etc.
And they further allege the realization and distribution of the $32,500, of which, as they aver, $870 was retained on pretense of having been paid to a real estate agent for securing a lessee.
[3] It is true they also allege that, in signing the powers of attorney, they were led into error as to their legal rights.by E. C. Mann and his agents, but the evidence fails to support that allegation. It shows, to the contrary, that, claiming ownership of the whole tract, plaintiffs for a year or two, tried to lease it as a whole, and on one occasion succeeded in so doing, but that the lessee withdrew after examining their title, and that the real reason why they executed the powers of attorney, containing their declarations upon the subject of the title, was that they became convinced that, unless they did so, or else litigated the question of title, a l’outrance, with defendants, they were *881 not likely to find any one who would undertake the development of the mineral contents of the land, and that it would be more profitable to compromise as they did, and thus secure a lessee who would drill a well, than to litigate or do nothing. They entered upon the negotiations with E. C. Mann and Mrs. Braselton knowing that the other heirs wore claiming to be the owners in indivisión with them, and themselves claiming ownership of the whole tract. They had had ample time before extending to defendants the invitation to discuss the matter within which to inquire into the merits of their pretensions; and, after they had signed the powers of attorney, there was a delay of 90 days before a lessee was found, within which they might have withdrawn the authority so conferred.
But, as they allege, E. C. Mann, “pursuant to the authority conferred upon him,” at the end of 90 days found a lessee, leased the property, collected $32,000, and paid plaintiffs their proportion -of it, which they received without objection; and it was only after another delay of two months that they brought this suit upon the ground that they had acted in error as to their rights, and were led into the error by E. C. Mann and his agents. Our conclusion is that there was no such error as plaintiffs supposed, and, if there had been, that plaintiffs would be es-topped to assert it by their declarations contained in the authentic instruments signed by them, and upon the faith of which defendants and others have been led into a contract from the profits of which plaintiffs have taken, and hold, the share upon which they agreed.
Plaintiffs offered no evidence to show that the commission paid to the real estate agent for finding the lessee was unreasonable or unusual.
The judgment appealed from is therefore
Affirmed.