## STOMA v. SMITH et al.*

### No. 5413.

Court of Appeal of Louisiana. Second Circuit.

Feb. 5, 1937.

Jackson & Smith, of Shreveport, for appellants.

W. M. Pollock, of Mansfield, for appellee.

DREW, Judge.

On the 18th day of March, 1936, John B. Stoma instituted a suit against Oscar Smith, Harry Smith, George Smith, Jr., Frances Lane (née Smith), Daisy Simmons (née Smith), and Chinelle Smith, alleging that on April 30, 1932, he acquired at judicial partition sale from the above-named defendants their one-half interest in the S. E. ¼ of S. W. ¼, section 10, township 11 north, range 14 west, De Soto parish, La. He alleged he was the highest bidder for the property, bidding $17.50 per acre or $700 for the whole; that the sheriff, in preparing the procès verbal and deed to said property, erroneously inserted the amount of $50 as the price bid and paid, when it should have been $700. He prayed

*Rehearing denied March 1, 1937.

that the deed be reformed so as to show the true price bid and paid for the property.

All of the impleaded defendants, except Chinelle Smith, answered. The answer sets out that he died in the year 1931. All the allegations of plaintiff's petition are denied and, in the alternative, they allege that, if plaintiff bid $700 for said property, he only paid $50, which was insufficient to pay the costs of court and was a vile price for the property attempted to be adjudicated and was out of all proportion with the actual value of said property; and that the attempted acquisition by plaintiff for said price was a fraud upon defendants.

Assuming the position of plaintiffs in reconvention, defendants averred that the judgment rendered in the partition proceedings, No. 13439 on the docket of the Eleventh judicial district court in and for De Soto parish, La., styled John B. Stoma v. Oscar Smith et al., and the pretended sale and adjudication to plaintiff thereunder of defendants' one-half interest in the property herein involved, was null and void for the following reasons:

"6. If the property was adjudicated to plaintiff in said suit at the price and sum of $50, as shown by the proces verbal of the sheriff in said proceeding and the deed executed by the sheriff pursuant thereto, said attempted adjudication and sale are null and void for the reason that there was in reality no price bid or paid for said property; that the sum of $50 was not sufficient to pay the costs of the attempted adjudication; that said property was well worth the sum of $1000 at the time of said adjudication and that the maintenance of said adjudication would have the effect of depriving these defendants of their property without any compensation whatever.

"7. That if the said John B. Stoma bid for said property the sum of $700, as alleged by him, the attempted adjudication of said property was null and void and no conveyance of said property could be made by the sheriff for the reason that said John B. Stoma did not pay to the said sheriff said amount of $700.

"8. They further show that one of the co-owners of said property, to-wit Chinelle Smith, at the time said partition proceeding was instituted, was a minor of the age of 17 years; that the father of said minor, George Smith, Sr., a resident of DeSoto Parish, Louisiana, had duly qualified as natural tutor of said minor and was the duly qualified and acting tutor of said minor at the time said partition proceeding was instituted; that the said minor was not cited through said tutor in said proceeding and that the appointment of a curator ad hoc to represent said minor was utterly null and void; and that said minor was, therefore, not properly represented in said suit.

"9. That the said Chinelle Smith departed this life in your said Parish and State during the month of August, 1931, and at the time of decedent's death was of the age of 19 years; that decedent left as sole heirs, George Smith, Sr., father, who inherited one-fourth of the undivided one-twelfth interest owned by said decedent, and that the remaining three-fourth's interest in the estate of said decedent was inherited by your defendants herein, brothers and sisters of said decedent, in equal shares, and that none of the heirs of the decedent as such were made parties to said partition proceeding."

And they further allege that, since said pretended adjudication, plaintiff has committed acts of waste on said property; has torn down, removed therefrom, and converted to his own use a six-room dwelling house located thereon, which was of a value of $500, and that he should be condemned to account to defendants for the value thereof. They further allege the interest owned by each of said defendants in said property, that the land has now no improvements on it, and is susceptible of an equitable partition in kind. They pray that plaintiff's demands be rejected at his cost and for judgment in reconvention decreeing the judgment rendered in suit No. 13439, styled John B. Stoma v. Oscar Smith et al. and the attempted adjudication and sale of the within described property be declared null and void; that the property be decreed to be owned by John B. Stoma and the defendants in the proportions of one-half to Stoma, 5/240 to George Smith, Sr., and 23/240 to each of the other defendants; that the said 40 acres of land be ordered partitioned in kind; and for further judgment in favor of defendants and against John B. Stoma in the sum of $250, being one-half the value of the dwelling removed and converted by the said Stoma, together with 5 per cent. per annum interest thereon from date until paid; for all costs and general relief.

Defendants and plaintiffs in reconvention filed an amended and supplemental answer in which they set out that through

error in the original answer and reconventional demand they omitted to show that there were other heirs of the deceased, Chinelle Smith, and averred that George Smith, Sr., after the death of appearers' mother, married again and of that marriage there were two children, namely, Omega and Buncher Lee Smith, both of whom were living at the time of the death of Chinelle Smith and are still living; and that they inherited from Chinelle $\frac{1}{224}$ interest each in and to the land herein involved. They further allege that Stoma had torn down and removed three additional buildings from said property, all of which were of a value of $600; and further allege:

"* * * that at the time said property was offered by the sheriff there had been obtained from the Clerk of Court his certificate of mortgages, which said certificate showed numerous encumbrances apparently affecting the property in question and which in amount greatly exceeded the sum of $1000, which said mortgage certificate was read by the sheriff at the time said property was offered for sale.

"4. They further show that in so far as the interest of defendants in said suit was concerned, said property was free of all liens and encumbrances, but that the reading of said mortgage certificate was calculated to deter and did deter bidders from bidding upon said property, and that the plaintiff in said suit had no right to demand that said property be exposed for sale unless and until by proper proceeding he had caused said mortgages and encumbrances to be erased and, in this respect, petitioner avers that none of the claimants under said inscriptions were made parties to said partition proceedings in any manner."

They supplemented the prayer of the original answer and reconventional demand to include the allegations of the amended answer.

George Smith, Sr., filed a petition of intervention in which he alleged that the issue of his second marriage were Omega Smith, born August 23, 1916, and Buncher Lee Smith, born February 21, 1917; that he inherited from Chinelle Smith, his son, an undivided $\frac{1}{48}$ interest in said land, and the said minors, sisters of the half blood, inherited $\frac{1}{224}$ interest each. He adopted all the allegations of the answers and reconventional demands of the other defendants, as well as the prayer which asked that his

interest and the minors' interests be recognized by the court.

Prior to the trial of the case, plaintiff, John B. Stoma, dismissed his original suit as of nonsuit, leaving nothing before the court except the reconventional demand of defendants. They have become plaintiffs in reconvention and will be hereafter referred to as plaintiff and John B. Stoma as defendant.

Defendant did not file any pleas or answer to the reconventional demand, and same was fixed for trial. After trial was had, the lower court rejected plaintiff's demands and rendered judgment dismissing the intervention and reconventional demand. From this judgment plaintiff has perfected and now prosecutes this appeal.

Defendant states in his brief that the whole case hinges upon the question of fact as to whether Chinelle Smith was a major or minor on December 21, 1929, when John B. Stoma filed suit for a partition of the property and when judgment was rendered on April 10, 1930, ordering the partition by licitation. Under our finding of fact, the determination of this question is sufficient for a decision of the case; however, there is one other charge of nullity which is likewise fatal to defendant's contention, and that is that the price bid for the property was never paid. We will take up the question of Chinelle Smith's age.

Plaintiff offered eight witnesses who testified as to the date of his birth. Daisy Smith Simmons, a sister, testified she was born in 1902; that her mother died in May, 1912; and that Chinelle was born on the same day her mother died. She was only 10 years old at the time of her mother's death; her testimony in some respects on other parts is confusing. Frances Lane (née Smith), a sister, testified that Chinelle was born May 24, 1912, and that their mother died about two hours after his birth. Harry Smith, a brother, testified that Chinelle was born May 24, 1912, and that his mother died a few hours afterwards. Lindsay Shade, an uncle, testified he received a letter from some member of the family a few days after Chinelle's mother died notifying him of her death and that she had left a baby, which had been named Chinelle.

All of the above witnesses were either litigants in this case or relatives, but, to substantiate that testimony, plaintiff offered the witness, Samella Brown, who is not

related and is entirely without interest in the case. She testified that she lived in the same neighborhood with George Smith, Sr., father of Chinelle, and was at his home the day Chinelle's mother died; that Chinelle was born the same day; that she nursed him from her breast while his mother was a corpse. She knew his age, because at the time of his birth her own baby, a girl, was 2 months old, and she was born on March 18, 1912. The baby daughter spoken of by Samella Brown, who at the time of trial was married and whose name is Lucy May Thomas, testified she was born March 18, 1912; that she started to school when 5 years old, and that Chinelle started at the same time; that she and Chinelle were childhood sweethearts and that they corresponded after they grew up until he died.

Iona Johnson testified that she lived in the same neighborhood with Chinelle's parents and that he was born the same day his mother died; that when she went to his father's home while his mother was a corpse she saw Samella Brown nursing Chinelle from her breast.

The record discloses that Chinelle's mother died May 24, 1912, and that his father remarried in the fall of the same year. His second wife testified that when she married Chinelle's father in November of the same year and took charge of his home Chinelle was a small baby, not old enough to walk.

In rebuttal of the above testimony, defendant offered the following:

Philip W. Webber, who was at one time a constable of the ward in which plaintiff lived. He testified he lived about two miles from Chinelle's home and that George Smith's last child was Chinelle and was born in 1905. This date was fixed by him in answer to a leading question propounded by defendant's attorney. The remaining testimony given by him clearly demonstrates that little credit can be given to his accuracy as to dates. It discloses that he knew very little about the family of George Smith, other than such a family lived in his neighborhood. This witness was a sick man and his memory faulty, according to his own statement, which is as follows:

"I don't remember her name; I heard it a while ago; I want to tell you I am sick now and don't remember names. Lots of times I come to tell a name I know and I can't call it. It is very easy for a man to get confused on names and ages. Lots of times I go to make two friends acquainted and I mix up their names."

To bear out his statement as true, we find he testified that George Smith, Jr., who was next in age to Chinelle, therefore next to the youngest child, was 30 years old in 1912 when his mother died, when in fact the eldest child was only 18 years of age. We give small consideration to the testimony given by this witness.

Ben S. Youngblood testified that Chinelle was born in 1905 between August 1st and November 1st; that he was working for Mr. Ricks during that period of time; that they went to get George Smith to pick cotton for them and he could not do so because his wife was confined; and he told them at the time that Chinelle was 5 days old; that Chinelle's mother died in 1912 when he was working in Mansfield. When he left the community where George Smith lived in 1905, after the crops were gathered George Smith had five children. This last statement of the witness clearly shows that the birth he remembered was not that of Chinelle, but that of George Smith, Jr., for the reason that George, Jr., was the fifth child and Chinelle the sixth, all of whom were living.

The only other white witness to testify for defendant was C. N. Baker, who stated he had known George Smith all his life and that, before George's wife died, he had four boys and two girls; that the four boys were large enough to run around the yard. He gave no reason or instance to cause him to recall this fact and, while we do not question his sincerity, his testimony cannot be given the same weight as the other witnesses who were in a better position to know the true facts and related incidents by which they could well remember.

Defendant offered a witness, Tom Jackson, who was in defendant's employ and had been for several years. He was known to the white people of his community as "Lying Tom," and his testimony in this case clearly explains the reason for the nickname. He was impeached upon material parts of his testimony, and the remainder of it is such and given in a manner that no court would consider in predicating a judgment.

The above-stated oral testimony, coupled with a petition in the matter of the tutorship of the minors of George Smith's deceased wife, is the entire testimony offered by defendant. Defendant relies heavily upon the petition in the tutorship proceedings,

and well that he should, for, with the exception of the testimony of C. N. Baker, which we have discussed, he has nothing else to rebut the testimony offered by plaintiff. The petition praying for the appointment of a tutor was filed October 5, 1912, and in that petition there is set out the names and ages of George Smith's children. It likewise sets out that George Smith's wife died "on or about the ——— day of May, 1912." The exact date of death was left blank. The children named are: Frances Smith, age 18; Oscar Smith, age 16; Harry Smith, age 14; Daisy Smith, age 12; George Smith, age 9; and Chinelle Smith, age 7. The petition is neither signed nor sworn to by George Smith or any one else, and there is no evidence in the record to show that the ages were given the attorneys who prepared the petition by George Smith or any one who knew the ages; and it is passing strange that the only correct age stated therein is that of the eldest child, which is given as 18 years. George Smith testified he knew nothing of the tutorship proceedings. He remembered leasing the land after his wife's death, but nothing about the tutorship. The attorney who prepared the petition had no independent recollection of the matter.

The material allegations of a petition for the appointment of a tutor are the death of the mother and the minority of the children; the exact ages of the children are immaterial and, since the petition is not sworn to by George Smith and there is no testimony to show he had knowledge of the contents of the petition as to the ages given, or otherwise, and has received no benefits or attempted to receive any by virtue of the ages given therein, we are of the opinion that the weight of said petition as evidence of the correct age of Chinelle Smith is very light and cannot prevail over the positive testimony to the contrary. This is especially true in this case, due to the fact that all the ages of the minors named therein are incorrect except that of the eldest child.

Defendant contends that, when we consider the regular intervals between the births of the first five children, there is too great a lapse between the last two; that is, George, Jr., and Chinelle. While we are unfamiliar with any rule governing the periodic interims between the births of children in a family, if there was a lapse, it has been clearly explained in this case.

The uncontradicted testimony of a number of witnesses is that Chinelle's mother had two miscarriages between the date of George's birth and Chinelle's, and no doubt her weakened condition, due to the said miscarriages, contributed to her death at Chinelle's birth.

We are always reluctant to reverse a trial court's finding of fact, but where, as in this case, we find it is clearly erroneous, we are forced to do so. We are convinced that Chinelle Smith was born on May 24, 1912, and therefore, at the time defendant herein filed suit and secured judgment therein, Chinelle was a minor and citation to him through a curator ad hoc was improper and not in compliance with the law. A tutor had been appointed through whom citation and service should have been made. It is uncontested that the failure to properly cite him is fatal to the judgment for partition and sale thereunder, and both are therefore nullities in their entirety, for the reason that in an action for partition all persons interested must be made parties. Rev.Civ.Code, art. 1412; Latham v. Glasscock, 160 La. 1089, 108 So. 100; Wheeler v. Mann, 149 La. 866, 90 So. 225; Crayton v. Waters, 146 La. 238, 83 So. 540; Smith v. Smith, 131 La. 970, 60 So. 634. And the minor Chinelle Smith was not made a party to the citation and service on a curator ad hoc, especially so when his legally appointed tutor was living within the jurisdiction of the court where the partition suit was filed.

It is unnecessary to discuss the other charges of nullity urged by plaintiff, but there is one which strikes us as being so flagrant we will touch on it without lengthy discussion. Defendant herein, who was the original plaintiff in this proceeding until he dismissed his suit as of nonsuit, alleged that at the sheriff's sale under the judgment for partition by licitation he bid the sum of $700 for the property, which was the last and highest bid, and that the sheriff, through error and oversight in preparing the procès verbal of said sale, had it to show that he only bid $50. He reiterates that he bid $700 and that the whole of said property was adjudicated to him for that amount. He prayed that the said sheriff's sale be corrected, amended, and reformed to comply with the true facts, as alleged. After he dismissed his suit as of nonsuit, he offered no evidence to show that the allegations contained therein were made in error; in fact, the matter was not referred

to at any time during trial of the case. The procès verbal of the sheriff and the deed to the original plaintiff were offered in evidence, showing that the bid which was the last and highest was $50, and the deed shows the consideration to be $50. The allegations made by petitioner are judicial confessions.

Article 2291 of the Revised Civil Code defines "judicial confessions" and their effect as follows:

"The judicial confession is the declaration which the party, or his special attorney in fact, makes in a judicial proceeding.

"It amounts to full proof against him who has made it.

"It can not be divided against him.

"It can not be revoked, unless it be proved to have been made through an error in fact.

"It can not be revoked on a pretence of an error in law."

The petition containing the judicial confession was sworn to by petitioner.

 In Prichard et al. v. McCranie et al., 160 La. 605, 107 So. 461, 465, the court said: " 'It is a well-settled rule in the administration of justice that a person will not be permitted to deny what he has solemnly acknowledged in a judicial proceeding. The only means of courts to protect the integrity of judicial proceedings are the sanctity which the law throws around them.' Mohawk Oil Company et al. v. Layne, 147 La. 895, 86 So. 322; Gaudet v. Gauthreaux, 40 La.Ann. [186] 187, 3 So. 645; Folger v. Palmer, 35 La.Ann. 743; Gilmer v. O'Neal, 32 La.Ann. 979; Durham v. Williams, 32 La.Ann. 962."

It therefore follows that plaintiff bid $700, according to his judicial confession, and only paid to the sheriff $50, as shown by the sheriff's procès verbal and deed. Under such circumstances, the sheriff was without authority to adjudicate the property to him for any amount less than that bid, and in doing so the deed he executed thereunder was null and void for want of authority on the part of the sheriff, and brought about by plaintiff's failure to pay or tender the price bid by him.

The only other question involved is the amount of damages due plaintiff by defendant for tearing the house or houses down and removing them from the premises. The evidence on this point is very meager and insufficient for us to base a judgment. We therefore think the proper judgment on that part is one of nonsuit, reserving to plaintiff the right to file a separate suit, if such is desired. Plaintiff alleged and proved there are now no improvements whatever on the 40 acres of land involved and is willing to accept as its portion either the north, south, east, or west half, and prays that the 40 acres be ordered partitioned in kind. The prayer will be granted.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court is reversed, and there is judgment for plaintiffs decreeing them to be the owners of an undivided one-half of the S. E. ¼ of S. W. ¼, section 10, township 11 north, range 14 west, De Soto parish, La., in the following proportions:

| | |
|---|---|
| Oscar Smith | 79/840 |
| Harry Smith | 79/840 |
| George Smith, Jr. | 79/840 |
| Frances Lane (née Smith) | 79/840 |
| Daisy Simmons (née Smith) | 79/840 |
| George Smith, Sr. | ⅛ |
| Omega Smith | 1/24 |
| Buncher Lee Smith | 1/24 |

And that John B. Stoma is decreed to be the owner of the remaining one-half.

It is further ordered, adjudged, and decreed that the above-described property be partitioned in kind; that is, one-half to plaintiffs in indivision and one-half to defendant. All parties to this suit are referred to the clerk of the court for De Soto parish, La., for the purpose of completing the partition. Costs of this suit, other than cost of completing the partition, to be paid by the defendant, John B. Stoma.