994 So.2d 679 (2008)
Brian L. CALDWELL, Albert B. Caldwell, Elaine A. Caldwell, and Kenneth R. Caldwell,
v.
Isidore Michael LECHE, Estate Of John B. Leche, II, Virginia B. Nolan, Melanie K. Homan, Mark J. Naquin, Adrienne Leache Guarisco, Charles J. Leche, II, Norman P. Leche, Jr., Patricia Leche Miller, Connie M. Leche, Deborah A. Leche, Paul J. Leche and John V. Caldwell, Jr.
Mark J. Naquin
v.
Brian Caldwell, High Grass, L.L.C., Craig Webre, In His Official Capacity As Sheriff Of The Parish Of Lafourche, State Of Louisiana.
Isidore Michael Leche, et als.
v.
Brian L. Caldwell, et als.
Nos. 2008 CA 0790, 2008 CA 0791, 2008 CA 0792.
Court of Appeal of Louisiana, First Circuit.
September 23, 2008.
Rehearing Denied November 6, 2008.
*680 Eric L. Trosclair, Christopher H. Riviere, Thibodaux, LA, for Appellees, Brian Caldwell and High Grass, L.L.C.
Johnny X. Allemand, Thibodaux, LA, for 2nd Appellants, Isidore Leche, et al.
Jude C. Bursavich, Scott N. Hensgens, Baton Rouge, LA, for 1st Appellant, Mark J. Naquin.
Misael A. Jimenez, Jr., Thibodaux, LA, for Appellee, Sheriff of Lafourche Parish, Craig Webre.
Before KUHN, GUIDRY, and GAIDRY, JJ.
KUHN, J.
This appeal of the judgment rendered in three consolidated lawsuits arises subsequent to the trial court's order, directing a partition by licitation of Leche Plantation. After the sheriffs sale, co-owners-appellants, *681 Mark J. Naquin and the Leche co-owners,[1] filed respective lawsuits, seeking to rescind the sale, naming as defendants the high bidders of the property, appellees Brian L. Caldwell, another co-owner, and High Grass, L.L.C. (High Grass), which subsequently acquired co-ownership interests in the property. The trial court dismissed the lawsuits of both Naquin and the Leche co-owners and upheld the validity of the sheriffs sale of the property to Caldwell and High Grass. For the reasons that follow, we affirm.

I. FACTUAL AND PROCEDURAL BACKGROUND
In June 2004, Caldwell and several other co-owners (at times "the Caldwell co-owners")[2] of the Leche Plantation, all represented by Nicholas Zeringue, filed a petition to partition the property by licitation. On August 11, 2005, the trial court signed a judgment, decreeing that the property was not susceptible to division in kind without great diminution in value and ordered that "the ... described property be sold at public sale by the Sheriff of Lafourche Parish, Louisiana, after the expiration of all legal delays, notices and advertisements required by law to the last and highest bidder for cash to effect a partition by licitation."[3] The judgment stated that "the proceeds of the sale be referred to Nicholas J. Zeringue, in his capacity as Notary Public, to complete this partition."[4]
Pursuant to the August 11, 2005 judgment, a commission issued to Craig Webre, the Sheriff of Lafourche Parish (the Sheriff), directing him to advertise and sell the property. The language set forth in the commission tracked that of the August 11, 2005 judgment, most particularly in requiring that the property be sold to "the last and highest bidder for cash to effect a partition by licitation." On November 9, 2005, the sheriff's office conducted the sale of Leche Plantation, at which Caldwell and High Grass[5] were the high bidders with a bid of $495,000.
A representative of the sheriffs office requested payment of the sheriffs commission and costs in the amount of $18,760.89. Subsequent to payment of the commission and costs, the Sheriff issued a deed dated November 9, 2005, which was recorded on November 14th.
On November 22, 2005, Zeringue filed a motion to have $285,743.47 deposited into the court's registry, which represented *682 60% of the proceeds from the sheriffs sale less his commission and costs. The remaining portion of the proceeds, representing Caldwell and the Caldwell co-owners' 40% interest in the property, was not included in the deposit.
On February 1, 2006, Naquin filed a lawsuit to rescind the sale, naming the Sheriff in his official capacity as a defendant in addition to Caldwell and High Grass. He averred that because Caldwell and High Grass had failed to tender the full purchase price, the sale was null and void. The Leche co-owners subsequently filed a lawsuit on April 12, 2006, also naming as defendants the Sheriff as well as Caldwell and High Grass, and likewise sought to rescind the sale of the property and the sheriff's deed. Alternatively, the Leche co-owners averred that the sale and the sheriffs deed should be set aside on the grounds that Caldwell, High Grass, and the Sheriff had "engaged in manipulative conduct designed to adversely affect the fairness of the competitive bidding process." The gist of their allegations in support of the claim was that High Grass had purportedly acquired the interests of co-owners, Patricia Leche Miller, Virginia B. Nolan, Norman Leche, Jr., (the Miller co-owners), which was prohibited by law. By supplemental petition, the Leche co-owners named the Miller co-owners as defendants.
Naquin and the Leche co-owners' lawsuits were consolidated with the June 2004 partition suit. Answers were filed by all the defendants in the Naquin and Leche co-owners' lawsuits, and a trial was subsequently held on July 23, 2007. On January 10, 2008, the trial court signed a judgment, dismissing the claims of the plaintiffs in the nullifications actions. The judgment also ordered Caldwell and High Grass to deposit $190,495.64[6] into the court's registry,[7] and disbursement of the proceeds in accordance with each co-owners' respective interest in the property. Naquin and the Leche co-owners (collectively referred to as "appellants" hereinafter) have appealed.[8]
*683 On appeal, appellants contend the trial court erred in concluding that: (1) the sheriffs sale and the deed were not absolute nullities since the evidence established that Caldwell and High Grass failed to immediately pay in cash the entire bid price of $495,000; (2) the sales of the Miller co-owners' interests were not prohibited transactions; and (3) Caldwell and High Grass's actions did not chill the competitive bidding process, which constitutes an alternative basis for annulling the sale.[9]

II. COMPLIANCE WITH THE ORDER OF PARTITION BY LICITATION

A. Validity of the Sheriff's Sale

i. Failure to Pay the Bid Price Immediately
Appellants assert that because Caldwell and High Grass failed to immediately pay the entirety of their bid price, the trial court erred in concluding the sheriff's sale was valid.
Sales by auction, including sheriffs' sales, are governed by the rules set forth in La. R.S. 9:3155-65. See La. R.S. 9:3154. When the highest price offered has been cried long enough to make it probable that no higher will be offered, he who has made the offer is publicly declared to be the purchaser, and the thing sold is adjudicated to him. La. R.S. 9:3157. This adjudication is the completion of the sale; the purchaser becomes the owner of the article adjudged, and the contract is, from that time, subjected to the same rules which govern the ordinary contract of sale. La. R.S. 9:3158. If the adjudication be made on condition that the price shall be paid in cash, the auctioneer may require the price immediately, before delivering possession of the thing sold. La. R.S. 9:3159. If the object adjudged is an immovable for which the law requires that the act of sale shall be passed in writing, the purchaser may retain the price, and the seller the possession of the thing, until the act be passed. This act ought to be passed within twenty-four hours after the adjudication, if one of the parties requires it; he who occasions a further delay is responsible to the other in damages. La. R.S. 9:3160. In all cases of sale by auction, whether of movables or immovables, if the person to whom adjudication is made does not pay the price at the time required, agreeably to the two preceding articles, the seller at the end of ten days, and after the customary notices, may again expose to public sale the thing sold, as if the first adjudication had never been made. La. R.S. 9:3161.
Deputy Sheriff Donna Lester was in charge of completing the November 9, 2005 sale. According to her testimony, after the successful bid by Caldwell and High Grass, Zeringue contacted her on behalf of his clients to inquire about payment of the purchase price. Lester requested only payment of the sheriff's commission and costs, which totaled $18,760.89. Because Zeringue was the notary public for the sale and the amount of the proceeds was so large, Lester stated that she allowed the remaining amount of *684 the purchase price to be retained by Zeringue on behalf of his clients. She acknowledged that neither of the high bidders nor their attorney ever handed her a check for payment of the bid price. Zeringue testified in conformity with Lester.
The record is devoid of any evidence that the appellants demanded the passage of the act of sale within twenty-four hours. The trial court found that the Sheriff never requested payment of the full purchase price and this finding is supported by the evidence. Thus, under an application of La. R.S. 9:3159 and 3160, the sale was not invalid because the bid price was not paid immediately since the sheriff never required it. See Orange Grove Properties, L.L.C. v. Allured, 03-1878, pp. 7-8 (La. App. 1st Cir.6/25/04), 885 So.2d 1170, 1174-75.

ii. Failure to Pay Entirety of Bid Price
Appellants also contend that the trial court erred in concluding the sheriff's sale was valid because Caldwell and High Grass failed to pay the entire bid price of $495,000. They urge that this failure warrants a declaration that the sheriff's sale is an absolute nullity.
The record establishes that on November 22, 2005 thirteen days after the sale  Zeringue filed the motion to deposit $285,743.47 into the court's registry, representing 60% of the proceeds from the sheriffs sale,[10] less the sheriff's commission and costs, and that Caldwell and High Grass retained the remaining proceeds, which represented their 40% ownership interest in the property. The motion and order seeking leave of the court to make the deposit was filed into the partition proceeding by Zeringue in his capacity as notary public.
Sale is a contract whereby a person transfers ownership of a thing to another for a price in money. La. C.C. art. 2439. The buyer is bound to pay the price. La. C.C. art. 2549. An obligor is a person bound to render a performance in favor of another called the obligee. See La. C.C. art. 1756. Thus, in a contract of sale, the buyer is the obligor bound to give the price in money in favor of the seller who is the obligee. See La. C.C. arts. 1765 and 2549. When the qualities of obligee and obligor are united in the same person, the obligation is extinguished by confusion. La. C.C. art. 1903.
As the buyers of Leche Plantation, Caldwell and High Grass were the obligors bound to give the price in money in favor of the obligees, the other co-owners selling their respective interests, which totaled 60% of the property. But Caldwell and High Grass were also the obligors bound to give the price in money in favor of themselves as the obligees of the 40% ownership interest they were selling. Insofar as this latter obligation, because the qualities of obligees and obligors were united in Caldwell and High Grass, that obligation (to give the price in money for the 40% ownership interest they had in the property) was extinguished by confusion. The deposit of 60% of the proceeds into the court's registry (after deduction of the sheriff's commission and costs) coupled with the extinguishment of the obligation to pay the remaining 40% of the proceeds by confusion resulted in a tender of payment of the entirety of the bid amount by Caldwell and High Grass.[11]
*685 The Sheriff has not required payment of the entire bid price from Caldwell and High Grass and, therefore, their failure to tender payment immediately after the sale does not invalidate the sale. Because the record establishes that Caldwell and High Grass deposited into the court's registry 60% of the proceeds from the sheriff's sale (less his commission and costs) thirteen days after the sale and the remaining portion of the obligation to give the price in money was extinguished by confusion, we find no error in the trial court's refusal to invalidate the sale for failure of the purchasers to pay the entire purchase price of $495,000.[12]

B. Acquisition of the Miller Co-Owners' Interests by High Grass
Appellants contend that the sale of the Miller co-owners' interests to High Grass on November 8, 2005, was prohibited because the trial court had already ordered a partition by licitation on August 11, 2005.[13]
A co-owner may freely lease, alienate, or encumber his share of the thing held in indivision. La. C.C. art. 805. All things corporeal or incorporeal, susceptible of ownership, may be the object of a contract of sale, unless the sale of a particular thing is prohibited by law. La. C.C. art. 2448.
We have found, and appellants have cited, no prohibition on the sale of a co-owner's interests during the pendency of a partition by licitation. The transfer entitled Caldwell and High Grass to the Miller co-owners' interests in the proceeds derived from the sheriff's sale. See Kelly v. Moore, 225 La. 1072, 1076, 74 So.2d 379, 380 (1954). Importantly, included in the deposit of $285,743.47, representing the proceeds attributable to 60% of the other co-owners' interests, was that portion previously owned by the Miller co-owners. Therefore, even if the November 8, 2005 sales from the Miller co-owners to High Grass were determined to have been prohibited, appellants were not exposed to any losses because the rescission of the *686 sale would have simply restored the parties to the situation that existed before the purported conveyances were made, see La. C.C. art. 2033, for which the proceeds of the sale had been deposited into the court's registry.[14] Accordingly, the trial court correctly dismissed appellants' claims on this basis.

III. PROPRIETY OF THE BIDDING PROCESS
The concealment or misrepresentation of facts, amounting to fraud, is not the only cause for annulling a judicial sale, but anything said or done by one who becomes an adjudicatee, for the purpose of preventing competition at the sale, or, in other words, for the purpose of chilling it, which is reasonably capable of doing so, and has that effect, will be sufficient to annul the sale. Pearlstine v. Mattes, 223 La. 1032, 67 So.2d 582, 586 n. 3 (1953).

A. Alleged Agreement with Sheriff
On appeal, appellants urge that Caldwell and High Grass had an unfair advantage over the other co-owners interested in purchasing Leche Plantation at the sheriff's sale on November 9, 2005, because they did not have to immediately pay the entire price in cash.
The evidence showed that about ninety days before the sale, Naquin attended a public seminar where the Sheriff spoke and answered questions about judicial sales. According to Naquin, after the seminar, he asked the Sheriff, "if I own 25 percent of a piece of property and it's sold at sheriff's sale, do I have to come up with 100 percent of the money, or would I just have to come up with 75 percent of the money?" Naquin stated that the Sheriff responded, "You got to come up with all of the money." The Sheriff testified that he did not recall the conversation.
Caldwell testified by deposition, stating that when he was bidding, he assumed that he would owe for the portion of the property that he and High Grass did not already own. He denied that anyone at the sheriffs office advised him that he could pay less than the entirety of the bid price.
The trial court found a lack of evidence to support the allegation that other conversations had taken place between the Sheriff, his representatives, and any of the Caldwell co-owners. Lester stated that if she spoke with any of the parties to these suits before the sale, she was unaware with whom she may have been speaking. Based on our review of the record, we find a reasonable evidentiary basis to support the trial court's determination that appellants failed to prove the concealment or misrepresentation of facts amounting to fraud between Caldwell or any of the Caldwell co-owners and the Sheriff or any of his representatives. Accordingly, the trial court was not manifestly erroneous in rejecting this claim by appellants. See Stobart v. State, 617 So.2d 880, 882 (La.1993).

B. Effect of November 8, 2005 Sales from Miller Co-Owners
Appellants claim that the pre-sale purchases of the Miller co-owners' interests in Leche Plantation constituted "unfair bidding in that this action dampened and otherwise chilled the competitive bidding process ... to the disadvantage of all other co-owners." They suggest that the pre-sale purchases placed a cloud on the title for Leche Plantation; eliminated the *687 Miller co-owners as potential bidders at the sheriffs sale; and achieved a monetary bidding advantage in excess of $50,000 in favor of Caldwell and High Grass.
As we have already pointed out, Caldwell and High Grass did not include the Miller co-owners' interests in the property in their retention of that portion of the sale proceeds attributable to their collective ownership. Thus, any bases supporting a rescission of the pre-sale transactions that the Miller co-owners may have had would not have affected the distribution of the proceeds from the sale. While appellants suggest that the pre-sale purchase eliminated the Miller co-owners from the bidding process, they produced no evidence to support that contention. Nothing in the record establishes that the Miller co-owners were precluded from bidding on November 9, 2005; and the fact that they sold their interests in the proceeds to High Grass does not give rise to an inference that they were unable to bid on the property at the sale. And while appellants complain that the high bidders were able to achieve a bidding advantage in excess of $50,000 as a result of the pre-sale transactions, they do not clearly explain upon what they base their calculation. Moreover, Caldwell's deposition testimony established that prior to the sheriff's sale, he and the Caldwell co-owners had made arrangements for a line of credit to pay for the property. Nothing in the record suggests that the alleged advantage allowed Caldwell and High Grass to pay an amount they otherwise could not have.
Appellants failed to establish that the pre-sale transactions from the Miller co-owners to Caldwell and High Grass constituted a concealment or misrepresentation of facts, amounting to fraud or that anything was said or done by Caldwell and High Grass by their pre-sale acquisitions to prevent competition at the sale. Accordingly, the trial court did not err in rejecting this claim by appellants.

IV. DECREE
For these reasons, we affirm the trial court's January 10, 2008 judgment. Appeal costs are assessed against appellants, Mark J. Naquin and the Leche co-owners.
AFFIRMED.
NOTES
[1] Our reference to "the Leche co-owners" encompasses the claims, asserted in a single petition, of Isidore Michael Leche, Connie M. Leche, Deborah A. Leche, Paul J. Leche, Barbara Andras Leche. Denise Leche, Bridget Leche, and Adrienne Leche Guarisco, individually and as independent administrator of the Succession of Charles Leche II, each of whom owned an undivided ownership interest in the property.
[2] The other co-owners who filed the original suit are Albert Caldwell, Elaine A. Caldwell [Voigt Delmonte], and Kenneth R. Caldwell. John Vernon Caldwell, Jr., Anne Vernon Caldwell Legarde, and Vernon Lee Caldwell, III were added by supplemental petition.
[3] The trial court expressly excepted from its order Naquin's 2005 sugar cane crop, recognizing Naquin's right of access and reasonable use of the property for harvest and to be paid if the purchaser elected to produce sugar cane from his plant and stubble.
[4] It is undisputed that all the parties in the partition lawsuit consented to Zeringue acting as notary public for the sale. No claims have been asserted against Zeringue in these lawsuits.
[5] High Grass consists of all the Caldwell co-owners (including Brian Caldwell). See n. 2, supra. It is undisputed that High Grass was not organized until November 28, 2005, i.e., nineteen days after the sheriff's sale at which it was a high bidder.
[6] After subtraction of $18,760.89 for the sheriff's commission and costs and $285,743.47 already deposited into the court's registry, which represented 60% of the ownership interests in the property, $190,495.64 is the remaining 40% of the purchase bid of $495,000.00 made by Caldwell and High Grass on November 9, 2005.
[7] The court's order directing appellees to deposit $190,495.64 into the court's registry has not been appealed.
[8] Subsequent to the grant of the appeals of the January 10, 2008 judgment, in order to effectuate disbursement of the proceeds in the two accounts in the court's registry, the trial court issued an amended judgment on March 25, 2008, ostensibly to correct typographical errors as well as errors in calculation. La. C.C.P. art. 1951 provides that a final judgment may be amended by the trial court at any time by its own motion or pursuant to the motion of any party, to alter the phraseology, but not the substance, of a judgment, or to correct errors in calculation. A judgment may be amended by the court where the amendment takes nothing from or adds nothing to the original judgment. But an amendment to a judgment which adds to, subtracts from, or in any way affects the substance of the judgment, is considered a substantive amendment. Frisard v. Autin, 98-2637, p. 7 (La.App. 1st Cir. 12/28/99), 747 So.2d 813, 818, writ denied, 00-0126 (La.3/17/00), 756 So.2d 1145. But see and cf. Hebert v. Blue's Auto and Truck Parts, 00-2154, pp. 1-5 (La. App. 1st Cir. 12/28/01), 804 So.2d 953, 956-60, writ denied, 02-0272 (La.3/28/02), 812 So.2d 635 (Lanier, J., concurring, in which he posits, "What change in a calculation would not be substantive?" He suggests that La. C.C.P. art. 1951(2) should not be interpreted to prohibit the correction of substantive errors of calculation). Substantive amendments to judgments can be made only after a party has successfully litigated a timely application for new trial, an action for nullity, or a timely appeal. The Louisiana Supreme Court has also recognized that, on its own motion, and with the consent of the parties, the trial court may amend a judgment substantively. Frisard, 98-2637 at p. 7, 747 So.2d at 818. None of the parties have complained about the amendment of the judgment on appeal, and their respective assignments of error do not raise any issues challenging the modifications set forth in the amended judgment.
[9] Although appellants assigned as error the failure of the trial court to annul the sale because "the entirety of the property was not transferred in the judicial sale," and throughout their brief they reference the nonconformity of the deed to the August 11, 2005 judgment in this regard, they did not brief this issue and, therefore, it is considered abandoned. See La. U.R.C.A. Rule 2-12.4.
[10] According to Zeringue's representations in the motion and order to deposit the money into the court, the sum of $285,743.47, representing 60% of the interests in the property, included those of the Miller co-owners.
[11] Appellants rely on Stoma v. Smith, 172 So. 202, 207 (La.App. 2d Cir. 1937), to suggest the sheriff's deed is null and void. In Stoma, the high bid at the partition sale was $700. But the bidder, who did not have a co-ownership interest in the property, only paid $50, and the sheriff accepted that amount as a full tender of the purchase price. The court, in dicta, stated that under those circumstances the sheriff was without authority to execute the deed of sale. Because Caldwell and High Grass tendered the entirety of the bid price by depositing 60% of the sale proceeds into the court's registry and, through confusion, the obligation to pay the remaining 40% of the proceeds was extinguished, Stoma is inapposite.
[12] Appellants suggest that, without jurisdiction to do so, the trial court effectively amended its August 11, 2005 judgment by validating the sheriff's sale, which had been conducted contrary to the order that Leche Plantation be sold at public sale to the last and highest bidder for cash. Appellants failed to timely demand passage of the act of sale as required by La. R.S. 9:3160. And although the Sheriff did not require them to pay the price immediately, because Caldwell and High Grass's obligation to pay 40% of the ownership interests was extinguished by confusion and within thirteen days the remaining 60% of the proceeds presented to the court, a timely tender of payment was made in this case. Although the Sheriff delivered the deed of sale without technically complying with the terms of in the August 11, 2005 judgment, the trial court clearly had jurisdiction to hear appellants' claims seeking to nullify the sale. See generally La. C.C.P. art. 2. The trial court did not award damages against the Sheriff for his technical noncompliance with the August 11, 2005 judgment, but on appeal, appellants have not complained about its failure to do so.
[13] The Miller co-owners admitted in their answer to the Leche co-owners' lawsuit that the sales of their interests in the property to High Grass were absolute nullities and filed suit to challenge these transactions in Jefferson Parish, asserting that the transactions were lesionary, The Miller co-owners also appealed the trial court's judgment in this case, but it was dismissed when they did not file a brief.
[14] Appellants correctly point out that the Miller co-owners' sales of their interests to High Grass appeared to have reserved unto themselves the minerals. But because appellants were not exposed to any losses arising from the November 8, 2005 sales, we find this irregularity is not properly before us in this appeal.