885 So.2d 1170 (2004)
ORANGE GROVE PROPERTIES, L.L.C.
v.
Jean ALLURED, Asa J. Baber, Jr., Dorothy Baber, Elizabeth Breazeale, H. Payne Breazeale, III, John Breazeale, Robert Breazeale, Jr., Robert Breazeale, III, Susan Breazeale, Bruce Crosthwait, William Crosthwait, John Dahmer, Nita K. Street D'Aubin, Clay B. Doskey, Linda Grant, Marcia Grant, Robert B. Grant, Paul Hebert, Jr, Oscar Lipscomb, Mary G. Laflin, Annette Breazeale Lee, Barbara H. Magruder, Mary H. McCowan, Charles Mercer, John Mercer, Robert Mercer, Victor Mercer, Peltier Land Co., Gail Grant Record, Elisabeth F. *1171 Sachse, Harry Sachse, Victor Sachse, III, Michael Street, Stephen Street, Trustee, Stephen Street, Jr., Stephen Street, Sr., Terre Par. Consl. Gov., Woodberry Royal Inc., Julie Breazeale Wright.
No. 2003 CA 1878.
Court of Appeal of Louisiana, First Circuit.
June 25, 2004.
A.J. Gray, III, Lake Charles, Counsel for Plaintiffs/Appellants Orange Grove Properties & Michael St. Martin.
*1172 Christopher St. Martin, Houma, William A. Eroche, Carl T. Conrad, Houma, Counsel for Defendants/Appellees Orange Grove Holdings, L.L.C., Peter Bertucci, Jr. & Kenneth Watkins and Intervenor Commerce Bank, N.A. of Bloomington, IL.
Victor A. Sachse, III, Paul M. Hebert, Jr., Robert I. Atkinson, Baton Rouge, Counsel for Defendants/Appellees Mary Hebert McCowan, et al.
Brent J. Rhodes, Damon J. Baldone, Houma, Counsel for Defendants/Appellees Absent and Unknown.
Charles S. McCowan, III, Baton Rouge, Counsel for Defendants/Appellees Mary Hebert McCowan, et al.
Stephen G. Peltier, Thibodaux, Counsel for Defendant/Appellee Peltier Land Company.
John D. Schoonenberg, Houma, Counsel for Defendant/Appellee Terrebonne Parish Consolidated Government.
Elton A. Darsey, Houma, Counsel for Defendant/Appellee Jerry J. Larpenter, Sheriff of Terebonne Parish, Peter S. Bertucci, Jr.
Before: PETTIGREW, DOWNING and McCLENDON, JJ.
DOWNING, J.
This matter arises from a public sale to partition property by licitation where the high bidder did not pay the bid price until two days after the auction. Orange Grove Properties, L.L.C., filed a petition to set aside the sale and to have Michael St. Martin declared the highest bidder. The trial court's judgment dismissed the suit and also cancelled a surface lease with Gecko Services, Inc. Orange Grove Properties, L.L.C., Michael X. St. Martin, and Gecko Services, Inc. (collectively, OG Properties), appeal the judgment.
The high bidder, Orange Grove Holdings, L.L.C. (OG Holdings)[1] filed a motion to dismiss this appeal. For the following reasons, we deny the motion to dismiss, affirm the trial court's dismissal of the lawsuit, and affirm the cancellation of Gecko's surface lease.

FACTS AND PROCEDURAL HISTORY
This matter began as a partition proceeding instituted by OG Properties, which had purchased an undivided 2/10 of 1 percent interest in 2,704.73 acres of Terrebonne Parish marshland on February 15, 2001. OG Properties no longer wished to own the property in common with the other thirty-nine named defendants. A trial was held on August 12, 2002, and the court ordered the property to be publicly sold for cash by the Terrebonne Parish Sheriff's Office. The sale took place November 6, 2002.
OG Properties' first bid was $50,000.00, and it continued bidding until the property was sold to its opponent, OG Holdings, for $1,300,000.00. At the time of the auction, OG Holdings had not yet filed its formation documents with the Louisiana Secretary of State Office. Two days later, on November 8, 2002, these papers were filed, and that same day, a check to pay for the property was delivered to the Terrebonne Parish Sheriff.
On November 8, 2002, OG Properties filed a petition to declare the sale null and to declare the bid of Michael X. St. Martin in the amount of $50,000.00 the last and highest bid.
On November 15, 2002, Gecko filed a petition to be recognized as having a surface lease on the said property. The purported lease from Orange Grove Properties, *1173 L.L.C. to Gecko Services, Inc. was filed in the conveyance records in Terrebonne Parish. In its answer to OG Properties' petition, OG Holdings filed a reconventional demand to cancel the lease. The reconventional demand alleged that the lease was facially invalid and subject to immediate cancellation at the lessor's option due to Gecko's abandonment of its obligations to the property.
The matter was tried on February 21 and March 14, 2003. Judgment was signed on March 21, 2003, dismissing with prejudice, OG Properties' petition to declare the $50,000.00 bid the last and highest bid and dismissing Gecko's petition to be recognized as having a surface lease on the property. From that judgment, this appeal ensued with OG Properties alleging the following assignments of error.

ASSIGNMENTS OF ERROR
1. The trial court erred in ruling that the sale to OG Holdings met the terms of the Partition Judgment, Commission to Sell, Notice of Sale and Legal Advertisements.
2. The trial court erred in relying on La. R.S. 13:4360 to permit OG Holdings to delay in paying its bid price.
3. The trial court erred in relying on La. R.S. 33:1428(7)(b) to permit OG Holdings to delay in paying its bid price.
4. The trial court erred in not rescinding the sale to OG Holdings because the Terrebonne Sheriff acted arbitrarily and capriciously in determining when the bid payment was due.
5. The trial court erred in not awarding the Partitioned Property to St. Martin, the only other bidder.
6. The trial court erred in canceling the Gecko surface lease.

MOTION TO DISMISS APPEAL
OG Holdings filed a motion to dismiss this appeal alleging that since the money for the sale has already been distributed to the property owners, the sale has been perfected, rendering this matter moot. OG Holdings cited no authority for this proposition, and we find none.
A moot case is one that seeks a judgment or a decree which, when rendered, can give no practical relief. Robin v. Concerned Citizens, St. Bernard, Inc., 384 So.2d 405, 406 (La.1980). It is well settled that the function of the appellate courts is to render judgments that can be made effective and not to give opinion on moot questions or abstract propositions. State v. Slater, 205 La. 1077, 18 So.2d 627, 628 (1944). An appeal however, is an exercise of the right of a party to have a judgment of a trial court revised, modified, set aside, or reversed by an appellate court. La.C.C.P. art.2082. This particular appeal appears to be no different from any other devolutive appeal involving a money judgment that has already been dispersed to the winning party before the appellate decision has been rendered. Thus, for the reasons assigned, the motion to dismiss this appeal is denied.

JUDICIAL SALES
The judgment rendered in the 32nd Judicial District Court ordered that the property at issue "be publicly sold for cash by the Terrebonne Parish Sheriff." A judicial sale was held, and OG Holdings was the high bidder. It presented a certified check in the amount of $1,300,000.00 two days later.
OG Properties argues that since OG Holdings did not have funds in its possession at the time of bidding and did not pay the bid price in cash at the time of the sale, the property should have been awarded to the other bidder.
There are two kinds of judicial sales. La.R.S. 9:3166. Those that are held when the property has been seized by an order *1174 of the court to be sold for the purpose of paying a creditor, and those that are ordered in matters of succession or partition. This is the latter kind and is subject to rules laid down for public sales in general so long as those rules are not contrary to the formalities expressly prescribed for such sales (in Title 13) La.R.S. 9:3167.
OG Properties argues that the sale should be set aside because the parties had not complied with the formalities of La.R.S. 13:4360. OG Properties argues that no provisions were made for a delayed payment and that the Sheriff had no authority to allow OG Holdings to pay on the third day after the sale. It argues that this act amounted to an "extension of credit" to this bidder. OG Properties cites Falgoust v. Morgan, 444 So.2d 740 (La.App. 5 Cir.1984), for this proposition.
Louisiana Revised Statutes 13:4360 provides that if the terms of sale provide for the full payment of the adjudication price at the moment of the adjudication, the seizing creditor may direct the officer conducting the sale either to re-offer the property immediately, or re-advertise the property for sale as provided in subsection C. La.R.S. 13:4360. The terms of the statute do not mandate a re-sale of the property. This is a permissive statute allowing the "seizing creditor" to decide whether to accept cash only or to order the property to be re-sold.
In this regard, we first note that no direction was made in accordance with the statute to trigger a re-sale. Rather, the seller accepted the funds, late or not. Therefore, were La.R. S. 13:4360 the controlling statute here, the trial court would not have erred in refusing to order a re-sale.
Next, assuming arguendo that a sale for cash under La.R.S. 13:4360 is a sale requiring "full payment of the adjudication price at the moment of the adjudication," we note that here there is no "seizing creditor." La.R.S. 13:4360, therefore, does not expressly apply. Accordingly, the public sale rules under La.R.S. 9:3151 et seq. as applied through La.R.S. 9:3167 govern this sale.
Louisiana Revised Statute 9:3159 provides that when the adjudication is made on condition that the price is to be paid in cash, then the auctioneer "may" require the price immediately before delivering possession of the thing sold. However, if the object adjudged is an immovable for which the law requires an act of sale, then the act of sale should be passed within twenty-four hours after the adjudication, if one of the parties requires it; and he who occasions a delay is responsible to the other in damages. La.R.S. 9:3160. If the price is not paid within ten days, the seller may order the property re-sold. La.R.S. 9:3161.
Here, the funds were paid within forty-eight hours, and there is no evidence that any party required the passage of the act of sale within a twenty-four hour period. There is no evidence in the record of any damages from the purported delay.
Even so, OG Properties argues that the sale should be set aside because the facts before us are analogous to those in Falgoust. We disagree. Falgoust involved unequal treatment of the bidders at the sheriff's sale when one bidder was allowed to pay by check and the other bidder was required to pay in cash at the time of the sale. Those are not the facts of this case.
Here, the trial court found as a fact that an announcement was made to all present that a high sale price was anticipated and whoever prevailed in the bidding would be allowed time to make arrangements to pay. Consistently, the sheriff's deputy who actually conducted the *1175 sale, Lt. T.J. Soudelier, testified that prior to the bidding on this particular property, he announced that the final bid price could be paid within a couple of days.[2] Lt. Soudelier said that before the bidding began, he advised the audience that he would take the commission to sell first; and that the terms he had just announced for the regular sale did not apply to the commission to sell property. OG Properties argue that Lt. Soudelier never made a general announcement. Another witness, however, supported the deputy's testimony, saying that he heard the announcement prior to the bidding. The trial court evidently accepted this testimony as true. Therefore, we conclude that Falgoust is inapplicable to the facts before us.
Accordingly, finding no manifest error, this sale was completed within the period prescribed by law pursuant to La.R.S. 9:3161, thus, assignments of error one, two, four and five are without merit.
Regarding the third assignment of error, OG Properties allege that the trial court erred in relying on La.R.S. 33:1428(A)(7)(b) to permit OG Holdings to delay in paying its bid price. The trial court's written reasons referred to La.R.S. 33:1428(A)(7)(a) and (b) in discussing the discretion afforded the sheriff concerning the fee or commission to be paid for selling the property. We conclude that La.R.S. 33:1428(7) is not applicable to the facts of this case. Therefore, this assignment of error is without merit.

*1176 SURFACE LEASE
OG Properties alleges in its final assignment of error that the court erred in cancelling Geckos' surface lease. The trial court declared the lease to be invalid because it failed to specify a real rent and because of Gecko's failure to perform services on the property.
The lease provided that Gecko was contracted to patrol the property and prevent the entrance of poachers and trespassers for a term of ten years. Paragraph 7 specifically provided that Gecko was to keep the premises in good condition at its own expense and to not permit the presence, use, storage, or release of hazardous substances during the term of the lease. The lease also had an abandonment provision. Paragraph 11 provided that should the premises be abandoned then the lease may be cancelled.
The trial court ruled that the evidence at trial showed that no acts were actually conducted in performance of Gecko's obligation to patrol the property. Gecko answered an interrogatory stating that a Gecko employee appeared at least twice a week to perform these contractual duties, but this assertion was disputed. Lee Welch testified that he had been going on the property for over twenty years and had never once seen a Gecko representative. Other witnesses who frequently hunted and fished on the property also testified that they had never seen anybody patrolling for poachers or trespassers. Sean Leary, Gecko's sole representative, admitted under oath that no real action to provide this service had been rendered. Mr. Leary also admitted that Gecko's answer to interrogatories regarding how much time was spent on the property was untrue.
Paragraph 11 of the lease provides a remedy in case the lessee is found to have abandoned its duties. There was ample evidence to support a finding that Gecko's contractual obligations were deemed to be abandoned because of its failure to preserve, maintain, and manage the property in an effort to prevent the entrance of poachers and trespassers. Accordingly, we conclude that the trial court did not err in cancelling the lease pursuant to Orange Grove Holding's request. This assignment of error is without merit.

DECREE
For the above reasons, the judgment of the trial court is affirmed. The costs of this appeal are assessed against Orange Grove Properties L.L.C., Michael X. St. Martin, and Gecko Services, Inc.
AFFIRMED.
PETTIGREW, J., concurs, and assigns reasons.
PETTIGREW, J., concurring.
I respectfully concur with the majority's report, and note additional reasons to cancel Gecko's lease. The Gecko lease was an attempt to manage the property. Louisiana Civil Code Article 801 requires agreement of all the co-owners of the thing to manage the property. OG Properties did not have the consent of all the co-owners.
Secondly, La. Civ.Code art. 805 requires the consent of all the co-owners for the lease, alienation, or encumbrance of the entire thing held in indivision. The lease to Gecko did not have the consent of all the co-owners and therefore was invalid from its inception.
NOTES
[1] We note the similarity in the names, but appellants herein will be referred to as OG Properties, and we will refer to appellees as OG Holdings.
[2] At trial, Lt. Soudelier testified in pertinent part as follows:

Q: Did you suggest to them [Chris or Steven St. Martin] that the cash could be paid at any time other than at 
A: Because of this situation, I knew that the sale price would go up into the hundreds of thousand dollars of dollars or a million or so forth, I gave them  they could have their money  in fact, I made this announcement at my sheriff's sale, that because of the commission to sell would be at such amounts, that they could have their  they could make arrangements to pay the sheriff's office their sale  their bid price, you know, within a couple of days if they needed to.
Q: You announced that at the morning of the sale?
A: At the morning of the sale, I did a specific thing of the morning of the sale. You were there, right?
Q: I know. And that's  I know I was there. I'm asking you 
A: Right.... And in that particular case for the commission to sell, I advised the audience that I was going to take the commission to sell first; and that the terms I had just announced did not apply to the commission to sell.
Q: Did you state to the group present what terms in your opinion applied to the commission to sell?
A: I said if they could  they could  they could make arrangements with us when they're going to pay their funds.
Q: I want to be real  real clear here. Did you say that before the bidding started to the group that was assembled?
A: That's right.
...
Q: Did you say when people's money would be due?
A: No, I didn't.
...
Q: It wasn't due by 3:00
A: That is correct....
Regarding his conversations with Mr. St. Martin's office prior to the sale, Lt. Soudlier testified as follows:
Q: When you were contacted by Mr. St. Martin or his office or either one of his sons to determine terms of payment, did you tell them that they could not make their payment other than at 3:00 pm on the date of sale? In other words, did they have to have their payment there at 3:00 pm on the date of sale?
A: No. Not on a commission to sell. And I knew it was going to go at a pretty high bid amount.
Q: So you would have afforded them the same extension of time for payment that you afforded Orange Grove Holdings.
A: That is corect[correct]. And that's the same announcement that I made at the beginning of my sales.